# CHARLESTON.

## STATE *v.* H. F. STEGER.

Submitted October 2, 1923.   Decided October 9, 1923.

1. BREACH OF THE PEACE—*Words Held not Breach of Peace and Indictment Failing to Allege That Actual Breach of Public Peace was Caused Thereby was Demurrable; "Breach of the Peace."*

   The use of abusive, profane and insulting language by a land owner to a person who is apparently digressing from the public road running through the farm, with intention of trespassing on the farm, unaccompanied by threats and causing no expectation or fear of personal violence, is not a breach of the peace at common law; and an indictment therefor which does not aver that an actual breach of the public peace was caused by the use of the words as alleged is demurrable.

Error to Circuit Court, Wetzel County.

H. F. Steger was convicted of an offense, and he brings error.

*Reversed.*

*D. V. Lemon* and *J. Howard Holt,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

The indictment, in substance, charges that Steger while near his dwelling house, and near one of the public roads, in the presence and hearing of Buchner and others who were in or near the public road, did unlawfully utter in a loud voice the following profane, vile, abusive and insulting words to Buchner: "Get up on the road you God-damned thieving son-of-a-bitch," and other like words, which, in their common use and application having been then and there calcu-

lated to arouse Buchner and the other persons passing and re-passing and to cause a breach of the peace, and to the disgust, shame and disgrace of all good citizens and persons in hearing and passing that way. A demurrer was interposed and overruled, the case tried before a jury which returned a verdict of guilty, and the court imposed a fine of $10 and confinement in jail for ten days; and defendant prosecutes this writ of error.

The evidence discloses that F. A. Buchner and his brother William were passing along the road which ran through defendant's land and had with them a dog and were going to deposit mail in a box at the forks of the road some distance away, and possibly farther to purchase a hog. Whether the Buchner boys (their ages are not given) carried guns the evidence does not disclose. One of them had a mattock. When they were five or six hundred yards from Steger's dwelling house one of the boys discovered a rabbit's track and began tracking it. Whether he left the road and went into Steger's enclosed land is a point in controversy in the testimony. Steger says he, Buchner, had entered his land with his dog; while the two boys say he was yet on the right of way of the road. At this time Steger used the language, or substantially the same language, set out in the indictment, necessarily in a loud voice, he being quite a distance away. He was asked by the boys to repeat what he had said, and the same language was repeated a time or so. No other persons were present or in hearing. Defendant does not deny uttering the words. His defense is that the Buchners had been hunting and trespassing on his lands against an express notice not to do so; and that F. A. Buchner with his dog was actually on his land at the time he ordered him off. This is the substance of the evidence.

Is this evidence sufficient to sustain an indictment for a breach of the peace at common law? We have no statute defining a breach of the peace nor any penalty therefor, and consequently we are governed by the common law. Many of the states have such statutes, and the reported cases deal largely with prosecutions under those statutes. They have little bearing upon this prosecution. For instance, the Texas statute provided that if a person used vile, offensive or vocifer-

ous language in a public place "calculated" to disturb the inhabitants of the public place then an indictment setting out the language used, the boisterous manner in which it was used, and charging the offense in the language of the statute, was sufficient, and would be a breach of the peace under the statute. *Parsons* v. *State,* 33 Tex. Cr. Rpt. 540. The Georgia statute provided that "Any person who shall, without provocation, use to or of another, in his presence, opprobrious words, or abusive language tending to cause a breach of the peace, or who shall in like manner use obscene and vulgar language in the presence of a female, shall be guilty of a misdemeanor." Where abusive language was used, under this statute it was held that the truth or falsity of the words was not material to the inquiry, the only question being whether there was sufficient provocation; and that it was sufficient to charge the offense, setting out the words, in the language of the statute. *Dyer* v. *State,* 99 Ga. 20, 59 Am. St. Rep. 228. The Vermont statute provided that one who "disturbs or breaks the public peace by tumultuous and offensive carriage, by threatening, quarreling," etc., shall be punished as prescribed, and it was held that an indictment which charged that defendant quarreled with a certain person by cursing and swearing at him and by calling him opprobrious names, which carriage of the person indicted had the effect to disturb the public peace, was good, although there was no allegation of intent to disturb the peace, *State* v. *Archibald,* 59 Vt. 548; and where one went to the dwelling of another and stood on the side walk and used vile, profane and obscene language in angry tones to the occupant of the house, in the midst of the village, in the hearing of others, constituted a breach of the peace under the statute. *State* v. *Archibald, supra.*

The authority cited by the attorney general to sustain the indictment in 8 R. C. L. at page 286, where it is said: "Unless expressly provided by statute it is not necessary to allege that the acts complained of were done with the intent to commit a breach of the peace, where the acts themselves are of such a character as necessarily to import a guilty intent," is based on the Vermont case last above cited, and where the breach of the peace for which the defendant in that case was

indicted was made a misdemeanor by virtue of the statute. The indictment is evidently a form used where the statute provides that the insulting words or riotous conduct is "calculated" to cause a breach of the peace.

Was abusive and insulting language a breach of the peace at common law? We do not find that it was, unless the use of the language had a tendency to provoke a conflict or a tumult. It is laid down in 9 C. J. p. 388 that, "Unless so provided by statute, abusive and insulting language will not constitute a breach of the peace, where there is no threat of, or incitement to, immediate violence. Where, however, it has a tendency to create a tumult and provoke a conflict, and especially when denounced by statute or ordinance, the use of such language may constitute an offense, although the other elements mentioned are absent." We can see no threat of violence in the language charged to the defendant in this indictment; and being 500 yards away we cannot see that it was provocative of any immediate affray. The public peace was surely not disturbed; only the defendant and the two Buchner boys were present. The circumstances do not show that any breach of the peace or public tumult or disquiet was effected; or that there was any probability that such result would be accomplished by the use of the terms. Even if the indictment be good, we do not think that the evidence justifies the conclusion that the averments thereof were sustained. The public tranquillity was not disturbed in the least. We do not find that abusive and insulting language, unless accompanied by some immediate threat of violence, was indictable at common law as a breach of the peace, and the later English decisions are to that effect. In *Regina* v. *Langley*, 21 K. B. Vol. 92 Eng. Rep. p. 184, abusive and insulting words were used by the defendant to the mayor of Salisbury (not while he was in the execution of his office) and upon demurrer the indictment was quashed, the court holding that the words were not indictable; but that the defendant might have been bound over to secure good behavior. The court said: "Words that directly tend to a breach of the peace, as if one man challenge another, are indictable, but for these petit offenses, which are *contra bonos mores,* the law has another provision, by requiring surety for the peace and good behavior." To

the same effect is *Ex parte Chapman*, 111 Eng. Rep. p. 974 (side p. 772.)

Actual or threatened violence is an essential element of a breach of the peace. *State* v. *Warner*, 34 Conn. 276; *Ware* v. *Branch*, 75 Mich. 488; *State* v. *Nease*, 46 Ore. 433; *Com.* v. *Krubeck*, 23 Pa. Co. 35. The indictment does not charge that the public peace was disturbed; it simply says that the words used were "calculated" to cause a breach of the peace, to the disgust, shame and disgrace of all good citizens and persons passing that way. Is defendant charged with committing a breach of the peace or of an attempt to disturb the public peace? The general principle of our criminal laws is to punish the act, and not the intent. The want of a direct allegation of anything material in the description of the substance, nature, or manner of a crime, cannot be supplied by any intendment or implication. In *The Queen* v. *Collingwood*, 87 Eng. Rpts. 1029 (16 King's Bench), it was held that to persuade an apprentice to embezzle his master's goods is an indictable offense as a breach of the peace; "but the indictment must positively aver that he did take away the goods in consequence of such persuasion." Here it is charged that the act (speaking the words) was done, and that it was "calculated" to cause a breach of the peace. Breach of the peace is a term of broad meaning and includes every act of violence which tends to disturb that sense of security and repose which is the right of every person under orderly government. Hence, riots, affrays, tumultuous petitioning, spreading false news with intent to disturb the peace, contending with angry words to the disturbance of the public tranquillity, or doing anything to provoke or excite others to disturb the public peace are included. As before observed, at common law abusive and insulting language will not constitute a breach of the peace where there is no threat of, or incitement to, immediate violence. There was no challenge to an affray in the words charged, no offer to fight by either of the parties as a result thereof, and no averment that the addressee of the words became incensed, aroused or that even his peace or tranquillity was disturbed. The parties were about 500 yards apart, and it seems that it was either difficult for the Buchner boys to hear what was said; or that they

were inclined to have them repeated for the purpose of aggravating the land owner. One of them said he could not hear distinctly. Was there any incitement to immediate violence, and consequent disturbance of the public peace?

An interesting discussion of what constitutes a breach of the peace at common law will be found in *Ware* v. *Branch*, circuit judge, 75 Mich. 488, wherein it was held that the use of foul, abusive and insulting language in a dwelling house in the presence of the occupants, unaccompanied by threats and causing no expectation or fear of personal violence, is not a breach of the peace within the common law definition of that term. The court said: "The only cases 'of breach of the peace, not involving open disturbance in public places, and to the actual annoyance of the public at large, or persons employed and actually engaged in public functions, require personal violence, either actually inflicted or immediately threatened. There are, in some of the definitions, references to language tending to provoke a breach of the peace, and relator's claim is based on this. But the authorities have very plainly held that this covers nothing that is not meant and adapted to bring about violence directly. It is laid down, very positively, that insulting and abusive language does not come within the rule, but it must be threats of immediate violence, or challenges to fight, or incitements to immediate personal violence or mischief." It is shown in the opinion that Hawkins in his work on "Pleas of the Crown" goes very fully into the subject, and points out the distinction always recognized by the authorities between words which, however abusive and offensive, may excite anger and those which directly incite to and invite violence; and, even when used in public, it is shown that they do not constitute an affray, which requires physical violence; and this is the essential elements of a breach of the peace committed, attempted or directly and immediately threatened. We do not think the indictment is sufficient as a common law indictment, and as above suggested we have no statute which makes the use of insulting and abusive language a criminal offense. There must be something more than the use of the language. Some element of intended violence or a civil remedy is provided where words are used toward invocation to violence must appear. Under sec. 2 of chap. 103

another which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace. It is true that the peace need not be actually broken; but there must be some act tending to the breach by which the community is disquieted and disturbed and of such sort and proximity as to create apprehensions in the minds of the lookers on. As above set out, there were no lookers on in this incident between the defendant and the Buchner boys. Illustrative of this principle is the case of *Com.* v. *Henderson,* 8 Grat. 708, where defendant went into his neighbors' yard and onto his porch and shot a dog which was lying in the yard, to the terror and alarm of the females in the house. The court said that the breaking of the close of the neighbor was not in itself an indictable offense, but when attended by the circumstances above set out it was indictable. In *Com.* v. *Redshaw,* 12 Pa. Co. Ct. Rep. 91, an indictment was sustained against defendant for calling the prosecuting witness a ''scab'' and ''a damned scab'' on the street as having constituted disorderly conduct; but the court based its decision on the fact that the incident occurred during a period of great public excitement when a strike was on and conflict between the workmen and the strikers was impending. The use of the words in a public street was calculated to produce a bloody riot under the circumstances.

The attorney general cites our case of *Marcuchi* v. *R. R. Co.,* 81 W. Va. 548, to sustain the judgment. In that case it was clear that Marcuchi had disturbed the peace in attempting to force his way into one of the railroad coaches while the vestibule, platform and steps were occupied by passengers in the act of alighting. He had been requested and cautioned not to do so, by the conductor, with whom he immediately entered into an altercation using abusive and insulting language in the presence of a large assembly of people. He was arrested by the conductor, ex-officio conservator of the peace, in charge of the train, and afterwards instituted suit against the railroad company for false arrest. This court held that the officer was justified in arresting Marcuchi as having committed a breach of the peace. The statute, sec. 31 of chapter 145 of the Code under which the arrest was made, provided that ''if any person, whether a passenger or not, shall, while

on any passenger car or on any train of cars, behave in a riotous or disorderly manner, he shall be guilty of a misdemeanor,'' for which fine and imprisonment is provided, and also an eviction from the car or train, ''by the person or persons in charge thereof.''

Defendant's counsel insist that no offense is charged in the indictment except that of profane swearing; and it is suggested by the attorney general that if that view be taken the verdict should stand and the case remanded for the infliction of the fine for profane swearing prescribed by section 15 of chapter 149 of the Code. The indictment cannot be considered as an indictment for profane swearing, because it does not conform to the requirements of the above cited section of our code. The infliction of punishment for profane swearing authorized by that statute cannot be predicated on this indictment.

We do not think the indictment is good, as it does not charge that the public peace and tranquility was disturbed by the use of the words set out in the indictment; only that the words were calculated to produce such result. Even if the indictment had been properly couched, we do not think the evidence would be sufficient to sustain it.

Having reached this conclusion it would be unnecessary to consider the other assignments of error. We note, however, that State's instruction No. 3, which directs the jury to find defendant guilty if they believe that the words spoken were heard by William Buchner ''and others'' and were then and there calculated to insult and anger him and others and cause a breach of the peace or bring on a fight or other breach of the peace; is in direct conflict with defendant's instruction No. 1, which told the jury to find defendant not guilty unless they found that the language alleged to have been used actually disturbed the public peace.

The judgment will be reversed, the verdict set aside; and proceeding to enter such order as the lower court should have entered, the demurrer to the indictment will be sustained and the defendant discharged.

*Reversed.*