# CHARLESTON.

## STATE v. G. P. WHITT.

Submitted March 25, 1924. Decided April 15, 1924.

1. HOMICIDE—*Deceased's Reputation, as Quiet and Law-Abiding Citizen Presumed Good; Primary Proof by State of Reputation of Deceased as Law-Abiding Citizen Held Prejudicial.*

   In a trial for homicide, until assailed by the defense, the deceased's reputation as a quiet and law-abiding citizen is presumed to have been good, and the state may not make it a subject of primary proof. Where such evidence is admitted over objection it can not be said that defendant is not prejudiced, his guilt of the offense charged not clearly appearing from the record. (p. 271).

2. SAME—*Defendant Entitled to Instruction Defining Degrees of Homicide.*

   Jurors are not presumed to be familiar with the constituent elements of the various degrees of homicide, and if de-

fendant so requests, he is entitled to an instruction defining them.  (p. 271).

3.  SAME—*Instruction on Legal Meaning of Malice, Failing to Detail Circumstances Tending to Rebut Inference thereof, Erroneous.*

Where the facts and circumstances of a homicide case are such that they may in the minds of the jurors rebut a mere inference of malice on the part of the accused, an abstract instruction to the effect that it is not necessary that malice should exist in the heart of the accused toward deceased or any particular person; and that deliberation, wilfulness and malice may be inferred from the use of a deadly weapon; and which omits to mention any of the various circumstances tending to rebut such inference, is erroneous. (p. 272).

4.  CRIMINAL LAW—*Abstract Instructions not Based on Evidence Improper.*

Abstract instructions not based upon the evidence are improper.  (p. 272).

5.  SAME—*Refusal of Instruction Charging that if one Single Fact Inconsistent With Guilt of Accused Proved Verdict Should be "Not Guilty," not Erroneous.*

It is not error to refuse an instruction which charges that if "one single fact" inconsistent with the guilt of defendant is proved, it is sufficient to raise a reasonable doubt and that the verdict should therefore be "not guilty." (p. 273.

6.  HOMICIDE—*Not Necessary for Arresting Officer to Specifically Declare Intention to Arrest One for Crime Committed in His Presence.* .

It is not necessary for a peace officer in arresting one who commits a crime in his presence, to declare in so many words that such is his purpose, his intention may be sufficiently evidenced by his efforts to catch and hold the offender, and in so doing, the officer is entitled to whatever protection the law affords him in such a proceeding.  (p. 273).

7.  ARREST—*Sheriff and Deputies as Peace Officers May Arrest, Without Warrant, Person Committing Offense in Their Presence.*

A sheriff and his deputies are peace officers or conservators of the peace; as such, they may, without a warrant, arrest one who commits in their presence a breach of the peace, or a misdemeanor which can not be stopped or redressed without immediate arrest.  (p. 275).

Error to Circuit Court, Wyoming County.

G. P. Whitt was convicted of murder in the second degree, and he brings error.

*Reversed, verdict set aside, and new trial awarded.*

*John M. McGrath,* for plaintiff in error.

*E. T. England, Attorney General,* and *R. Dennis Steed,* Assistant Attorney General, for the State.

MEREDITH, PRESIDENT:

Defendant obtained a writ of error to a judgment of the circuit court of Wyoming County wherein he was sentenced to seven years' imprisonment upon the verdict of a jury finding him guilty of murder in the second degree.

We will make no comment upon the evidence further than is necessary to discuss the errors assigned. It appears that defendant and his son, Alva Whitt, were deputy sheriffs of the county, and lived at Bud, a station on the line of the Virginian Railway. The deceased, John Bishop, a nephew of defendant, lived there, as did also one Dominick Chrisendella, a railroad section foreman. Chrisendella had been in the habit of taking his coal supply from the coal trains as they passed there. On January 7, 1922, defendant saw him throwing coal from one of the passing railway cars and arrested him for larceny. Defendant had no warrant. About this time, deceased, John Bishop, came along and made some objection to Chrisendella's arrest and search without a warrant. Defendant told Bishop that if he did not desist he would arrest him and take him along to Mullens, where he was intending to take Chrisendella. Defendant claims that Bishop made some threat to the effect that defendant could not take Chrisendella, and to prevent him, Bishop started to his home after his revolver; whereupon defendant called to his son Alva, to stop or catch Bishop. Alva ran after Bishop and caught him as he was about to enter his yardgate. A scuffle ensued between them, Bishop finally working his way to his porch, where he caught hold of one of the porch pillars. About this time some one called to defendant to hurry. Some witnesses say

it was Bishop's wife, but this she denies; at any rate, it appears that some one called from the direction of Bishop's home, and that it was a woman's voice, asking the defendant to hurry there. He ran to where the two were scuffling, and caught hold of Bishop. He had his revolver in one hand. He says that in the scuffle Bishop made a lurch or jerk and caused the revolver to discharge. Bishop was hit in a vital spot and died from the wound some seven hours later. Defendant claims the killing was accidental.

The first error assigned is that the state, over the objection of defendant, was allowed to prove in chief the general reputation of the deceased as that of a quiet, peaceable and law-abiding citizen when his reputation therefor had not been assailed. This was error. *State* v. *Arrington,* 88 W. Va. 152, 106 S. E. 445; *Dock* v. *Commonwealth,* 21 Gratt. (Va.) 909. It is conceded by the Attorney General that this was error, but it is urged that under the circumstances the defendant was not prejudiced and that we should not reverse the case on that ground. We can not accede to that view. This is not such a clear case that we can say that defendant ought to have been convicted, regardless of error. Upon the evidence the jury could have acquitted him. Reasonable minds might have come to entirely different conclusions upon the evidence adduced. We can not say what influence this improper evidence had upon the jury nor need we speculate upon that question. It is sufficient to say that the defendant is entitled to a trial according to the rules of law.

The remaining assignments of error relate to the instructions.

At the instance of the state, the court instructed the jury that, under the indictment, if warranted by the facts and circumstances in the case, they might return any one of five verdicts: (1) murder in the first degree; (2) murder in the second degree; (3) voluntary manslaughter; (4) involuntary manslaughter; and (5) not guilty; and then told the jury what punishment, under the several verdicts, might be inflicted. As this instruction did not tell the jury the constituent elements of the several offenses, defendant offered his instruction No. 1, which in addition to stating the same

matters as were embodied in the instruction given for the state, defined the constituent elements of each of the four several offenses. The court refused to give defendant's instruction on the ground that it was covered by that given for the state. No instruction was given defining the elements of the several offenses. The jurors were not presumed to know, but they had a right to know and the defendant had a right to have them know, what the constituent elements of the several offenses were. Unless they did know, they could not intelligently determine what their verdict should be. *State* v. *Turner,* 29 S. C. 34, 13 A. S. R. 706; 13 R. C. L. p. 706. Defendant's instruction No. 1 should have been given.

The court also gave state's instruction No. 4 which told the jury that "to convict one of murder it is not necessary that malice should exist in the heart of the accused against the deceased. If the deceased was guilty of shooting with a pistol loaded with powder and leaden ball or some other hard and explosive substance, another, and of killing him, the intent, the malice and wilfulness, deliberation and premeditation may be inferred from the act; and such malice may not be directed against any particular person, but such as shows a heart regardless of social duty and fatally bent on mischief." This instruction is taken from *State* v. *Welch,* 36 W. Va. 690, 15 S. E. 419. It was criticised in that case by Judge BRANNON, but not held reversible error. In *State* v. *Best,* 91 W. Va. 559, 113 S .E. 919, upon an indictment for malicious shooting, an instruction telling the jury that to convict one of malicious shooting it is not necessary that malice should exist in the heart of the accused against the wounded person, but that if the accused was guilty of shooting another with a deadly weapon, the intent and malice might be inferred from the act, was held to be error because it ignored facts and circumstances shown in the evidence, which tended to rebut any presumption that might be inferred from the bare fact of the shooting with a deadly weapon. We think the criticism of the instruction in that case is applicable to the one given here. It wholly ignores the facts and circumstances shown in this case; it is abstract; it ought not to have been given.

While, no point is made on state's instruction No. 5, since the case must be tried again, we think it proper to say that this instruction is incorrect as applied to the facts in this case. We find no evidence in the record of "lying in wait, previous threats, formed enmity and menaces" of the defendant against the deceased that would warrant the inclusion of these terms in the instruction. An instruction should have reference to the facts shown in the case on trial. For this reason it is as a general rule bad practice to lift bodily from another case an instruction probably applicable to the facts shown there and use it in a case where the facts shown are totally different.

The court refused defendant's instructions numbered 4 and 5. No. 4 appears to be substantially covered by other instructions which were given.

Instruction No. 5 reads as follows:

"The court instructs the jury that if there is any one single fact, proved to the satisfaction of the jury which is inconsistent with the guilt of the defendant this is sufficient to raise a reasonable doubt, and the jury should find the defendant not guilty."

It was shown in the evidence that immediately after the shooting, the defendant hurried after a doctor for the deceased,—a fact proved which in some degree "is inconsistent with the guilt of the defendant," but certainly not controlling. This single illustration clearly shows that it was not error to refuse the instruction.

The court also refused defendant's instruction No. 11, which reads:

"The Court instructs the jury that a Deputy Sheriff is a peace officer and, as such, has the right, without a warrant, to arrest any one who commits a crime in his presence, and if you believe from the evidence in this case that, on the occasion referred to in the evidence, the witness Domineck Chrisendella, in the view and presence of the defendant, G. P. Whitt, a Deputy Sheriff of Wyoming County, West Virginia, was taking and throwing coal from the cars of the Virginian Railway Company at Bud, Wyoming County, West Virginia, on the occasion referred to in the evidence, then

the said G. P. Whitt, as Deputy Sheriff of Wyoming County, not only had the right but it was his duty to arrest the said Demineck Chrisendella, and if you shall further find from the evidence in this case that the deceased, John Bishop, by threats, menaces, acts or otherwise, forcibly or illegally hindered, obstructed or opposed the said G. P. Whitt, as such Deputy Sheriff, in the lawful discharge of his official duties, in relation to said arrest, then you are further instructed that the said John Bishop was guilty of a misdemeanor, and that the said G. P. Whitt, as such Deputy Sheriff, had the right, without a warrant, to arrest him, and that he, also had the right to call on the witness Alva Whitt, or any other by-stander, to assist in making said last mentioned arrest.''

The state defends the action of the court on the ground that there was no evidence showing that the defendant attempted to arrest Bishop or that he called upon his son to do so. The evidence does tend to show when Bishop started on a run toward his house the defendant thought he was going after his revolver to enable deceased to prevent defendant's taking Chrisendella to Mullens, and then he called on his son, Alva Whitt, a deputy sheriff, to ''catch that man.'' He did not tell him in so many words to arrest him, but that that was what he meant might be reasonably inferred.

Another reason stated in oral argument is to the effect that a sheriff under our law is not a peace officer and therefore has no right to make an arrest without a warrant, except for a felony. But this can not be true; he is a conservator of the peace and has always been so recognized. His common law duties as conservator of the peace are thus stated in 25 Am. & Eng. Ency. Law, p. 672:

''The sheriff is, in his county or bailiwick, the representative of the king or sovereign power of the state to preserve the peace. He has the care of the county, and where the public peace is concerned, his authority is co-extensive with that of a justice of the peace. He may, upon view, without writ or process, commit to prison all persons who break, or attempt to break, the peace; he may award process of the peace, and bind any one in recognizance to keep it. He is bound, ex officio,

> to pursue and take all traitors, murderers, felons, and
> other misdoers, and commit them to jail for safe-keep-
> ing.    Indictment will lie against him for a failure to
> perform these duties.''

Some of the foregoing duties are judicial; from these,
for the most part if not from all, he has been relieved by
statute, but his ministerial duties remain, among them his
duty to make arrests when authorized by law.    See also 1
Minor's Inst. p. 113; 1 Bl. Comm. 343; 35 Cyc. p. 1488, and
cases cited.

But there are valid objections.    In the first place, the
instruction fails to state that if the jury should find that
Chrisendella was *unlawfully* taking the coal.    If he had any
right to arrest him, it was because of the commission of a
criminal offense in his presence; but    the    instruction,    as
drawn, does not present the question whether Chrisendella's
act was lawful or unlawful.

However, a more serious question    arises    and    that    is
whether a deputy sheriff has a right without a warrant
to arrest one who commits in his presence a misdemeanor
which does not amount to a breach of the peace, or which
may likely lead to a breach of the peace.    The right of a
police officer of the City of Grafton, without a warrant, to
arrest one for a misdemeanor committed in the officer's pres-
ence, is fully discussed by Judge MILLER in *State* v. *Lutz*,
85 W. Va. 330, 101 S. E. 434, and he there points out the
statute authorizing constables to arrest for certain offenses
committed in their presence, section 9, chapter 153, Code,
and the other, section 221, chapter 50, Code,    authorizing
justices and constables to arrest for offenses within the juris-
diction of the justice, when committed in their presence.
Another statute, section 14, chapter 19, Barnes' Code, 1923,
authorizes members of the Department of Public Safety,
when witnesses to the offense, to arrest, without a warrant,
any one who commits any crime, regardless of its character.
But we find no such general statute giving such authority to
a sheriff or his deputies.    Unless modified by statute, the
sheriff's authority to make arrests must remain as at the
common law.    As stated by Judge MILLER in *State* v. *Lutz*,

*supra,* ''at common law an officer had no authority to make an arrest for a misdemeanor though committed in his presence unless it involved a breach of the peace,'' citing 2 R. C. L. 446-447, and note.    There are certain exceptions to this rule, as pointed out in 2 Am. & Eng. Ency. Law, p. 881, where it is stated that ''night-walkers, prowlers and suspicious characters going around at night'' might be arrested without a warrant; or to prevent an imminent breach of the peace.    5 C. J. p. 408.    There may be other exceptions, as in cases of special emergency, but the general rule is at common law that to authorize the arrest of one for a misdemeanor committed in the presence of the officer, without a warrant, the offense must involve a breach of the peace. As was said by Judge LIVELY *in State* v. *Steger,* 94 W. Va. 576, 119 S. E. 682, ''Actual or threatened violence is an essential element of a breach of the peace.''    He cites the case of *Queen* v. *Collingwood,* 87 Eng. Rep. 1029 (16 King's Bench) where it was held that to persuade an apprentice to embezzle his master's goods is indictable as a breach of the peace, but no reason was assigned for this holding.    We find no authorities holding that simple larceny is a breach of the peace, or that an arrest may be made therefor without a warrant, though committed in the presence of the officer, in the absence of a statute or municipal ordinance granting such authority.    We can conceive of larceny being committed under some circumstances which might immediately lead to a breach of the peace, if not prevented by the arrest of the offender.    In such case his immediate arrest by an officer observing him would be justified.    But we think the proper rule is stated by Wharton in enumerating the instances wherein an officer may, at common law, arrest without a warrant for offenses committed in his presence.    He says:

> ''The better rule, however, is that the right to apprehend for offenses committed in the officer's presence is limited to felonies, breaches of the peace, and to such misdemeanors as can not be stopped or redressed, except by immediate apprehension.''    1 Whar. Crim. Proc. (10th ed.) §35.

This would, under the theory of the defense, authorize the defendant to arrest Bishop in order to prevent him from committing a breach of the peace, or possibly a much graver crime which the evidence tends to show he was preparing to commit. But the instruction as drawn was properly refused.

For the foregoing reasons, the judgment is reversed, the verdict is set aside, and a new trial awarded the defendant.

*Reversed and remanded.*