# CHARLESTON.

STATE *ex rel.* SARAH SONNER, Admr., *v.* WILLIAM DEAN *et al.*

## (C. C. 317.)

Submitted January 14, 1925.   Decided January 27, 1925.

SHERIFFS AND CONSTABLES—*Action Cannot Be Maintained on Sheriff's Bond for Killing by Deputy Making Unauthorized Arrest.*

In an action against a sheriff and his surety on his official bond, the declaration alleges that a deputy sheriff, without a warrant, shot and killed one who was playing a game of chance for money with cards, and who attempted to escape and avoid arrest upon the appearance of the officers.

There are no averments from which we can infer that the public peace, tranquility, decorum, peace or order was being breached or threatened, or that the immediate arrest of the player was necessary in order to redress the misdemeanor then being committed.

*Held:* that the attempted arrest as alleged was unauthorized and therefore the act of the deputy complained of in the declaration was not an act of misfeasance which breached the conditions of the sheriff's bond, under sec. 11, ch. 7, of the Code, but an act of malfeasance for which an action can not be maintained by virtue of the statute on the sheriff's bond.

(Arrest, 5 C. J. § 31 ; Sheriffs and Constables, 35 Cyc. p. 1906.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Case Certified from Circuit Court, Berkeley County.

Action by the State on relation of Sarah Sonner, Administratrix, against William Dean and others. After judgment for plaintiff on demurrer to declaration, the trial court certified case for decision of questions presented on demurrer.

*Affirmed in part; reversed in part.*

*Forrest W. Brown* and *C. N. Campbell,* for plaintiff.
*E. L. Luttrell* and *Kilmer & Byrer,* for defendants.

HATCHER, JUDGE:

This is an action brought in the circuit court of Berkeley county against its sheriff and his surety on his official bond for the alleged unlawful killing of the plaintiff's decedent, Edward Sonner, either by the sheriff or one of his alleged deputies.

The declaration alleges that Dean, in company with Joseph Lord and Charles Jack, his deputies, undertook and attempted to arrest (without warrant) Edward Sonner for an offense committed by Sonner and others in the presence of the officers, to-wit, the offense of unlawfully gambling and playing a certain game of chance for money with cards, commonly called "poker"; that Sonner attempted to escape and avoid arrest, and in order to prevent the escape and to frighten and intimidate Sonner into submission to arrest, Dean (as alleged in one count), Lord (according to another count), Jack (as appears from another), or Jack and Lord acting together (as set up in another) shot and killed Sonner.

The circuit court held the declaration and each of its eight counts good on demurrer; but on its own motion certified the case here for decision on the seven questions presented by defendants on the demurrer.

A carefully prepared opinion on these questions was also filed in the case by the learned circuit judge, which has evidently so impressed counsel for demurrants that, in their brief here, they present only three objections to the declaration, namely:

(*a*) A sheriff is liable under Section 11, Chapter 7, Code, for

misfeasance and default, but not for malfeasance of a deputy.

(*b*) There is no charge in any count that the deputy was directed by Dean to fire the pistol (which killed Sonner) for the purpose of intimidating Sonner into submission to arrest. Failure to so charge fixes the act of the deputy, as alleged, to be an act of malfeasance for which the sheriff was not responsible.

(*c*) A sheriff is not liable on his official bond for such acts of a deputy as are alleged in the fourth count of the declaration, where it appears the deputy has given the bond authorizing him to carry a pistol, as provided by Code, Chapter 148, Section 7.

1. The first proposition of demurrants correctly states the law.

2. Determination of the second objection to the declaration involves a consideration of what acts of an officer constitute misfeasance and malfeasance respectively. Definitions of these words as given in demurrants' brief are as follows:

MALFEASANCE: "The doing of an act wholly wrongful and unlawful."

MISFEASANCE: "A default in not doing a lawful act in the proper manner—omitting to do it as it should be done."

The definition of malfeasance given will suffice, but a much broader and more comprehensive definition of misfeasance, one which we prefer, is given in Bouvier's Law Dictionary:

> "MISFEASANCE: The performance of an act which might lawfully be done in an improper manner, by which another person receives an injury. It differs from malfeasance or nonfeasance. Misfeasance is the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner, while malfeasance is doing an act which is positively unlawful or wrongful." Accord: State to use of *Cardin* v. *McClellan et al.*, 113 Tenn. 616, 3 Ann. Cas. 992; *Hayes, Admr.*, v. *Railway Company*, 145 Ky. 209, Ann. Cas. 1913-B, 719; *Bell* v. *Josselyn*, 3 Gray (Mass.) 309, 63 Am. Dec. 741.

The definition of misfeasance in demurrants' brief is taken from 20 Am. & Eng. Ency. Law (2d ed.), 802. This authority also accords with Bouvier by further stating:

"Misfeasance has also been defined as the improper performance of some act which might lawfully be done."

If, therefore, a deputy sheriff has authority under the law to make an arrest without a warrant for the misdemeanor alleged in the declaration when committed in his presence, the acts complained of herein are acts of misfeasance, otherwise they are acts of malfeasance.

Fortunately, we have for our guidance in this matter a very concise statement of the law in such a case, by Judge MERE-DITH, in the recent case of *State* v. *Whitt,* 96 W. Va. 268, 122 S. E. 742:

"A sheriff and his deputies are peace officers or conservators of the peace; as such they may, without a warrant, arrest one who commits, in their presence, a breach of the peace, or a misdemeanor, which cannot be stopped or redressed without immediate arrest."

Wherefore, our attention now centers on whether or not the offense Sonner is alleged to have committed was a breach of the peace or could have been redressed only by immediate arrest. In *State* v. *Clark,* 64 W. Va. 625, on page 641 of the opinion of Judge MILLER, and in *State* v. *Long,* 88 W. Va. 669, at page 682 of the opinion of Judge LIVELY, we adopted in part the definition of the term "a breach of the peace" as given in Cyc. The same definition now appears in 9 C. J. 386, and is in part as follows:

"The term 'breach of the peace' is generic, and includes all violations of the public peace or order or decorum; in other words, it signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community. . . . By peace, as used in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or a community where good order reigns."

See also Bishop, Crim. Law (9th ed.), Section 536. While we approved in *State* v. *Steger,* 94 W. Va. 576, 119 S. E. 682, the oft-repeated dictum that "actual or threatened violence is an essential element of a breach of the peace," we do not

thereby limit such violence to *personal* violence. ''Actual personal violence is not an essential element of the offense,'' explains the Supreme Court of Michigan in its opinion in *Davis* v. *Burgess,* 54 Mich. 514. Such violence, actual or threatened, may be also the violence to the public peace, order, decorum, or repose.

But do the averments in the declaration warrant the view that the public was in any way disturbed by the offense with which Sonner is charged? If the public knew nothing about this game of cards, if the peace, tranquillity, order, decorum or repose of the public was not disturbed thereby, then, even though it was a statutory crime, it was not a breach of the peace and neither the sheriff nor his deputies had the right to arrest therefor, despite the fact that the gaming occurred in their presence.

The declaration does not name the place where the gaming occurred; it makes no claim that the public knew of the game or that its decorum was disturbed or threatened thereby; it simply charges ''unlawful gambling and playing a certain game of chance for money with cards, which said game is commonly known as poker,'' in the presence of the officers.

The declaration is equally barren of averment from which we can infer that this misdemeanor could not have been redressed except by immediate apprehension of Sonner. We can not infer from the mere allegation that Sonner was escaping, that such escape was necessarily permanent rather than temporary. We can not infer that Sonner intended to leave the country, merely because he was caught gaming. We can not infer that the officers did not know or recognize Sonner, and that if he then escaped, future apprehension would be impossible. There is nothing alleged to show that Sonner could not later have been arrested upon a warrant.

Without positive allegation in the declaration that the community had knowledge of and was in some way disturbed or threatened by this violation of the law, without the statement of any facts from which we can infer that the public order or tranquillity was thereby breached, without averment to show that the offense could not have been redressed at a later time, we are unable to view the attempted arrest of Sonner, as

alleged, as within the lawful authority of the sheriff or his deputies.

Taking this view, it necessarily follows that we must hold that the undirected acts of Lord and Jack, respectively, as in the declaration alleged, were acts of malfeasance, for which the sheriff was not liable on his official bond.

3. Finding no averment in the declaration that either deputy had given bond authorizing him as such deputy to carry a revolver, as provided in Section 7, Chapter 148, Barnes' Code, 1923, a discussion of this proposition is not now warranted.

The demurrer to the first, second, fourth and fifth counts of the declaration is therefore sustained; it is overruled as to the third, sixth, seventh and eighth counts.

*Affirmed in part; reversed in part.*