STATE OF WEST VIRGINIA

*v.*

DEWEY SWANSON LAWSON

(No. 9713)

Submitted October 2, 1945. Decided November 13, 1945.

*H. E. Dillon, Jr.*, and *Chas. E. Mahan*, for plaintiff in error.

*Ira J. Partlow*, Attorney General, *Ralph M. Hiner*, Assistant Attorney General, and *Frances Haney Atwood*, Special Assistant Attorney General, for defendant in error.

FOX, JUDGE:

The indictment in this case charges that the defendant, Dewey Swanson Lawson, "within one year of the date of the finding of this indictment, in said County of Fayette, unlawfully did kill and slay one Danese Claytor, against the peace and dignity of the State." Trial was had before a jury, resulting in a verdict finding the defendant guilty of involuntary manslaughter. A motion to set aside the verdict was overruled and a sentence of both fine and imprisonment was imposed on defendant by the trial court, to which the defendant prosecutes this writ of error.

We are not asked to appraise the evidence in the case. Counsel for defendant state in their brief filed here that: " * * * the evidence was such that any jury could have reasonably returned a verdict of guilty or not guilty upon the evidence before it. The question of whether or not the death of the deceased was caused proximately by an unlawful act of the defendant, could easily have been resolved either way on the somewhat vague and wholly contradictory testimony."

The assignments of error cover: (1) The refusal of the trial court to permit to go to the jury a question addressed on cross-examination to one John Henry Simms, a witness for the State, and his answer thereto, touching his belief as to the effect a conviction of the

defendant in the case being tried would have on certain civil actions arising out of the same collision, then pending against the defendant in the same court, in one of which the witness was plaintiff, and in another his daughter was plaintiff, and in one of which trial had been set for a later day in that term; (2) and (3) the giving of instructions Nos. 1 and 6 at the instance of the State and over the objection of the defendant; (4) refusal of said court to give instructions Nos. 6 and 7 offered by the defendant; and (5) the refusal of the said court to set aside the verdict aforesaid and to award the defendant a new trial.

Taking up the first assignment of error, we find that the offense charged against defendant arose out of an automobile collision, and that defendant was operating one automobile and John Henry Simms the other. The wife and child of Simms, along with Danese Claytor and one other person, were in his automobile, and it appears that of these, all who survived the collision, were, at the time of this trial, prosecuting civil actions for damages in the same court against the defendant, Dewey Swanson Lawson, for damages allegedly sustained by them in this collision. Simms testified rather fully as to how the collision occurred. On cross-examination he was asked if he did not have an interest in the case and if he, his wife, and child did not have actions pending against the defendant, to all of which he replied in the affirmative. Evidence that these actions were docketed for trial later in the same term at which the defendant was being tried was likewise offered on cross-examination of Simms, but was not allowed to go to the jury and an exception was taken. Simms was then asked, "James, you believe that if through your testimony and the testimony of your friends this man is convicted of a criminal charge, that that will help your chances in recovering money damages from him, don't you?" Objection to this question having been made, an affirmative answer was given to the court in chambers, but neither the question nor the answer was permitted to go to the

jury. The defendant excepted to the action of the court at the time.

That a witness in a case, civil or criminal, may be inquired of touching his feeling for or against a litigant; or that testimony may be introduced showing such feeling, his pecuniary interest in the result of the case, or as to any other fact or circumstance which might affect his credibility as a witness, is not disputed. The rule is well stated in Underhill on Criminal Evidence, 3d Ed. 565: "The bias of the witness and his interest in the event of the prosecution are not collateral, and may always be proved to enable the jury to estimate his credibility. They may be proved by his own testimony upon cross-examination or by independent evidence. Thus, for example, the prosecution may show that its witness has, on his direct examination, unexpectedly proved hostile, and may then show by other witness that the biased witness was at one time ready and willing to testify against the prisoner. * * * Under modern rules the possession of an actual pecuniary interest in the outcome of an action is not a valid objection to the competency of a witness. But it may always be shown, even in a criminal proceeding, as a fact from which the jury may infer that the witness is biased." This statement is well supported by our own decisions, among which are, *State* v. *Conkle*, 16 W. Va. 736; *State* v. *Henderson*, 29 W. Va. 147, 1 S.E. 225; *Schmertz* v. *Hammond*, 47 W. Va. 527, 35 S.E. 945; *Ward* v. *Brown*, 53 W. Va. 227, 44 S.E. 488. See *Wadley* v. *Commonwealth*, 98 Va. 803, 35 S.E. 452; Underhill on Criminal Evidence, 3d Ed. 565; 70 C. J., Title Witnesses, Sections 1025, 1207, and 1208.

But we think the rule quoted and the cases cited mean that the facts and circumstances may be shown, or testimony elicited on cross-examination to establish facts, from which the attitude of the witness may be reflected, but that it is for the jury to infer therefrom whether there is bias or interest on the part of a witness which may affect his credibility. It seems to us that when all

the facts and circumstances surrounding the witness, and his interest in the case, have been developed, his own belief as to the value of his testimony to him in other litigation is unimportant; that is for the jury to determine in giving weight to his testimony. A witness may testify that the outcome of a suit is of no concern to him, but facts and circumstances touching his relationship toward the parties or the subject matter in litigation, being shown, the jury may well infer that he has an interest in the case which may bear on his credibility. The interest of the witness being admitted by him, the trial court did not abuse its discretion in refusing to permit inquiry as to his opinion on the effect a conviction of the defendant might have on his own claim and those of his wife and child, in their several civil actions against defendant which grew out of the same automobile collision in which Danese Claytor lost her life.

.The trial court, at the instance of the State and over the objection of the defendant, gave to the jury instructions Nos. 1 and 6, which in their order read as follows:

### "STATE'S INSTRUCTION NO. 1

"The court instructs the jury that one of two verdicts may be found by you in this case, if the evidence so warrants: (1) Involuntary manslaughter; (2) Not guilty.

"The court further instructs the jury that involuntary manslaughter is where one person while engaged in an unlawful act, unintentionally causes the death of another person; or when a person engaged in a lawful act negligently causes the death of another person."

### "STATE'S INSTRUCTION NO. 6

"The court instructs the jury that if, from all the evidence in this case they believe, beyond a reasonable doubt, that on the 21st day of October, 1944, the defendant immediately before and at the time of the collision resulting in the death of Danese Claytor, was driving his car upon the left-hand side of the highway, and was

driving upon his left-hand side of the highway at the time of colliding with the car aforesaid, and if you further believe, beyond all reasonable doubt that the fact that the defendant was so driving upon his left-hand side of the highway was the sole and proximate cause of the collision, and that said collision resulted in the death of Danese Claytor, then you should, under these circumstances, return a verdict against said defendant of involuntary manslaughter as charged in the indictment in this case."

It will be observed that Instruction No. 1 tells the jury, in effect, that involuntary manslaughter may result from the doing of a lawful act in a negligent manner; and Instruction No. 6 tells the jury, in effect, that if the jury believe beyond a reasonable doubt that the defendant was driving his automobile on the left side of the highway and that such driving was the sole and proximate cause of the collision which resulted in the death of Danese Claytor, a verdict of involuntary manslaughter should be returned against the defendant. Driving on the left side of the highway may or may not be negligence, depending on the circumstances, and may or may not be an unlawful act. Therefore, an instruction which tells a jury that merely driving on the left side of the highway, even if it is the sole proximate cause of a death amounts plainly to an instruction that negligence alone in the performance of a lawful act may constitute the crime of involuntary manslaughter. In this view the two instructions present substantially the same question.

The decision of this case calls for research as to the proper definition of "involuntary manslaughter." A study of texts and cases discloses that the authorities are in hopeless confusion, the difference centering on whether the performance of a lawful act must, in itself, be "unlawful" or simply "negligent", to constitute an element of involuntary manslaughter. In 4 Blackstone, Cooley's Edition, Vol. II, 189, involuntary manslaughter is defined as follows: "Manslaughter is therefore thus defined, the unlawful killing of another without malice

either express or implied; which may be either voluntarily, upon a sudden heat; or involuntarily, but in the commission of some unlawful act." In Wharton's Criminal Law, Eleventh Edition, Vol. I, 622, it is defined in this language: "Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, or from a lawful act negligently performed. Hence it is involuntary manslaughter where the death of another occurs through the defendant's negligent use of dangerous agencies, and so where death incidentally but unintentionally results in the execution of a trespass." In 26 Am. Jur. 166, referring to involuntary manslaughter, it is stated: "The crime, as defined by the common law, is the unintentional killing of another occasioned by a person engaged at the time in doing some unlawful act not amounting to a felony and not likely or naturally tending to endanger life, or engaged in the doing of a lawful act in an unlawful manner." In 40 C.J.S., 918, there is this definition: "As described at common law and under statutes substantially declaratory thereof, involuntary manslaughter consists in the killing of another without malice and unintentionally, in doing some unlawful act not amounting to a felony or naturally tending to cause death or great bodily harm, or in doing some act lawful in itself in an unlawful manner or negligently, or by the negligent omission to perform a legal duty." An examination of 22 Words and Phrases, 599, shows that the decided cases in referring to the performance of a lawful act in relation to involuntry manslaughter use the words "unlawful", "negligently", "negligent omission to perform a legal duty", "in an unlawful and careless way", "unlawful manner or without due caution and circumspection", "wantonly or in a grossly careless manner", "improper or negligent", and "reckless and careless". In State v. Clardy, 73 S.C. 340, 53 S. E. 493, there was quoted with approval a definition of involuntary manslaughter as being "the unlawful killing of a human being without malice either express or implied,

and without intent to kill or inflict an injury causing death, committed accidentally in the commission of some unlawful act not felonious. * * * This definition includes homicides resulting from negligent performance, without actual criminal intent, of a lawful act. And undoubtedly the common-law rule is that criminality may be affirmed of a lawful act carelessly or negligently done. The negligence, however, must be aggravated, culpable, gross. That is, it must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as evidences a disregard of human life or indifference to consequences. The negligence in such cases supplies in a measure the direct criminal intent."

We need not go farther to show the existing confusion. Some of the cases we have examined are based on statutory definition; some statutes define voluntary and involuntary manslaughter in one sentence or paragraph. In Indiana the enactment was: "Whoever unlawfully kills any human being without malice express or implied, either voluntarily, upon the sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter." 2 Bishop on Criminal Law, 9th Ed. 560. This statute has been amended to read: "Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter." Burns Indiana Statutes, Section 10-3405. Obviously, these enactments were based upon the definition laid down by Blackstone. It is needless to say that we have no statutory definition of manslaughter and must therefore look to the common law.

Inasmuch as we have always turned with respect to the decision of the courts of Virginia, many of the older of which are binding authority in this State, we think it advisable to trace the decisions of the courts of last resort in that State in order to learn how they have treated this perplexing question to this date, and to illustrate the difficulties courts have encountered in dealing with

this subject. In *Byrd* v. *Commonwealth*, 89 Va. 536, 16 S.E. 727, the Blackstone definition of voluntary manslaughter is applied, and his definition of involuntary manslaughter is used. In a note following the case of *Souther* v. *Commonwealth*, 7 Gratt. 678 (Virginia Reports Annotated), it is stated that: "Involuntary manslaughter is the killing of one accidentally contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act". The *Souther* case and *Commonwealth* v. *Jones*, 1 Leigh 598, 610, are cited in support of that statement, although a study of these cases has not convinced us that they sustain the quoted statement. In *Mundy* v. *Commonwealth*, 144 Va. 609, 131 S.E. 242, it is held: "Involuntary manslaughter is the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act, or in the improper performance of a lawful act." In *Goodman* v. *Commonwealth*, 153 Va. 943, 151 S.E. 168, the defendant was convicted of involuntary manslaughter and it was held: "One [in this case an automobile driver] who accidentally kills another, even though he may be chargeable with some actionable negligence, is not guilty of a crime, unless his negligence is so gross and culpable as to indicate a callous disregard of human life and of the probable consequences of his act." This case was based upon the theory that where there is no recklessness, there can be no crime, and, strictly, upon the theory that simple negligence cannot be made the basis of crime. The latest case in Virginia is that of *Albert* v. *Commonwealth*, 181 Va. 894, 27 S.E. 2d 177. This was a case of a drunken driver. The first point of the syllabus is: " 'Involuntary manslaughter' is the killing of a person accidentally, contrary to killer's intention, in prosecution of unlawful, but not felonious, act, or improper performance of lawful act, and has been defined as unintentional killing as result of unlawful act not amounting to felony or lawful act negligently performed, as where death occurs through killer's negligent use of dangerous agencies." This case is also au-

thority for the proposition that "recklessness in itself may establish involuntary manslaughter." It is further held that: "In prosecution for involuntary manslaughter, instruction to find defendant guilty if jury found from evidence beyond reasonable doubt that defendant drove truck, which struck and killed deceased, with such gross and culpable recklessness, negligence, and carelessness as to indicate callous disregard of human life and probable consequence of his act, was proper." We think the Virginia cases have finally come to a holding that something more than simple negligence is necessary as the basis of the crime of involuntary manslaughter. It is quite evident that that Court is inclined to the view that where negligence is involved as an element of manslaughter, either voluntary or involuntary, it must, to support a conviction, be shown to be gross, culpable and reckless.

Two decisions of this Court touch upon the question. In *State* v. *Clifford*, 59 W. Va. 1, 52 S.E. 981, a jury had found the defendant guilty of murder in the second degree in the trial court, and sentence was imposed on said verdict. There was a reversal, probably on the view that malice had not been shown. So far as we can discover from a reading of the case, the question of what constitutes involuntary manslaughter was not involved. However, the Court took occasion to say: "Voluntary manslaughter is the intentional, unlawful and felonious but not deliberate or malicious, taking of life. The common law definition of involuntary manslaughter is an unintentional killing, resulting from an unlawful act on the part of the accused, not amounting to a felony, or from a lawful act, negligently performed"; and cites Wharton on Homicide to sustain the statement. In *State* v. *Whitt*, 96 W. Va. 268, 122 S.E. 742, the defendant was charged with murder, and convicted of murder in the second degree. The trial court, at the instance of the State, gave an instruction telling the jury the different offences of which the defendant might be convicted under the indictment, including voluntary manslaughter,

should the testimony justify it, but not defining the various elements of the several offences. The defendant then offered an instruction defining these various offences, which instruction the trial court refused to give. In the refused instruction the following definition of manslaughter appears: "* * * involuntary manslaughter is where one person while engaged in an unlawful act, unintentionally causes the death of another person, or when engaged in a lawful act negligently causes the death of another person." 2 Lee, The Criminal Trial in the Virginias, 2d Ed. 888. This Court held that this instruction should have been given, although the opinion, and the reversal of the case, were based upon the theory that the defendant was entitled to have these various offences defined, rather than upon the correctness of the definitions used in the refused instruction. From the records in criminal cases coming to this Court, we are led to believe that the giving of the instruction quoted above, or its equivalent, is common in the courts of this State.

The advent of the automobile age has made it necessary to reexamine the question involved, which is—the propriety of an instruction under which the jury might find a defendant guilty of manslaughter on proof of simple negligence. In most states, and in this State, the great majority of negligent acts on highways are, by statute, made misdemeanors. Code, Chapter 17, Article 8. The enumeration of these offences would serve no useful purpose. To operate an automobile while drunk, or the reckless driving thereof, is made unlawful, and could therefore be classified as the doing of an unlawful act— that of using the highway in an unlawful manner— and thus lay the basis for a conviction of involuntary manslaughter. On the other hand, many instances do occur where there is an act of negligence through failing, momentarily, to watch the road, miscalculation of distances or otherwise, which are not in themselves unlawful, or made so by statute. The courts have recognized this difficulty, and many of them, the Virginia courts in particular, have been seeking a way out. They

speak of the improper performance of a lawful act, gross negligence, reckless conduct and like expression, all tending to avoid the holding that simple negligence, not made unlawful by statute, may be made the basis of a conviction of involuntary manslaughter. The whole question for the first time is now presented to us.

In the first place any crime involves the commission of an unlawful act. If not unlawful, an act would not amount to a crime. The indictment in the case at bar charges that defendant "unlawfully did kill and slay one Danese Claytor". If that indictment had only charged that defendant "negligently did kill and slay one Danese Claytor" we apprehend that on demurrer it would have been held that no criminal offence had been charged. If that be true, how can a court, by an instruction to the jury, create a criminal offence by the use of language which if it had been used in the indictment would not have charged such offence. We think it fair to assume that the word "negligent" or "negligently", when used in the definition of involuntary manslaughter has been intended to imply some character of negligence violative of a statute, or of an improper, wanton or reckless nature such as would, in itself, have been unlawful, even in the absence of a statute making it so.

Then, if we trace applications of the common law definition of involuntary manslaughter, we find that some unlawful act on the part of a person charged with that crime is considered necessary to constitute the offence. 4 Blackstone, 189. Treatment of involuntary manslaughter in our own cases is apparently based on a departure from the definition employed by Blackstone. We do not think that departure should have been made, and so far as the cases of *State* v. *Clifford, supra,* and *State* v. *Whitt, supra,* tend to hold that a defendant may be convicted of involuntary manslaughter under charge and proof of simple negligence, they are disapproved and overruled. In our opinion, to convict a person on a charge of negligence, it must appear that the act resulting in death is in itself unlawful, or a lawful act

performed in an unlawful manner. It may be said that the commission of an act in an unlawful manner makes that act unlawful from the beginning. But all the definitions of involuntary manslaughter seem to recognize some distinction between an unlawful act and a lawful act performed in an unlawful, or even negligent, manner. Violations of a statute or any improper, reckless or wanton conduct of a nature calculated to cause injury to another should, in our opinion, be considered as acting in an unlawful manner, however lawful that act might have been if performed in a proper manner. This rule would do nothing more than require the State to show that the act, or the manner of the performance of the act, for which conviction is sought is unlawful and culpable and something more than the simple negligence, so common in everyday life, in which there is no claim that anyone has been guilty of wrong-doing.

In the case at bar, by instruction No. 1, given at the instance of the State, and over the objection of the defendant, the jury was told, in effect, that one of the elements on which a conviction might be had for involuntary manslaughter was "when a person engaged in a lawful act negligently causes the death of another person." That instruction told the jury that a person guilty of simple negligence could be convicted of involuntary manslaughter. By instruction No. 6, likewise given at the instance of the State, and over defendant's objection, the jury was told, in substance, that if they believed defendant was driving his car on the left-hand side of the highway, and was so driving at the time of the collision, and that such driving was the sole and proximate cause of the collision that resulted in the death of Danese Claytor, they should return a verdict of involuntary manslaughter against the defendant. That instruction, too, told the jury, in effect, that in driving his automobile on the left side of the road he was guilty of negligence. This went too far. In some circumstances such an act would be negligent and unlawful. Code, 17-8-4, provides: "An operator meeting another vehicle

coming from the opposite direction on the same highway shall turn to the right of the center of the highway so as to pass without interference." A motorist is not in all circumstances precluded from using the left side of the highway. *Ewing* v. *Chapman*, 91 W. Va. 641, 114 S.E. 158; *Parks* v. *Tillis*, 112 W. Va. 295, 164 S.E. 797. Here the jury was told that the fact defendant was driving his automobile on the left side of the road, if that act was the proximate cause of the death, was sufficient to convict him of involuntary manslaughter. We are of the opinion for reasons given above that the giving of these instructions was error, and that the giving of either thereof, independently of the other, would have been error.

The defendant complains of the trial court's refusal to give his instructions Nos. 6 and 7. As we view the matter, there are two defects which justified the trial court's refusal. One, they each submitted to the jury a question of law, and, two, instruction No. 6 would have told the jury that only the commission of some unlawful act, on the part of the defendant, would have made him guilty of involuntary manslaughter, whereas, as indicated herein, the doing of a lawful act in an unlawful manner may constitute that offence. We do not think the trial court erred in its refusal to give these instructions.

On the whole we are of the opinion that the instruction which should have been given in this case was one telling the jury, in substance, that involuntary manslaughter could only be sustained upon a showing of the commission of an unlawful act, or the performance of a lawful act in an unlawful manner. We do not undertake to form the definition of that offence. Apparently, there have already been too many. We simply mean to indicate that, in our view, an instruction should tell the jury that there must be either some unlawful act, or the performance of a lawful act in an unlawful manner, before a defendant can be convicted of involuntary manslaughter. As indicated above, violation of the statute,

or wanton or reckless misconduct, and many other species of conduct, if established by the evidence, might justify a holding that a lawful act had been performed in an unlawful manner. For illustration, everyone has a lawful right to travel the highways of this State, but when anyone violates the statute law of the State regulating travel on the highways, he exercises his lawful privilege in an unlawful manner.

We reverse the judgment of the Circuit Court of Fayette County, set aside the verdict, and award defendant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*