STATE OF WEST VIRGINIA

*v.*

HAROLD LESTER LOUGH

(No. 10969)

Submitted September 9, 1958. Decided November 11, 1958.

*Milford L. Gibson, Charles H. Brown,* for plaintiff in error.

*W. W. Barron,* Attorney General, *Fred H. Caplan,* Assistant Attorney General, for defendant in error.

BROWNING, JUDGE:

The defendant, Harold Lester Lough, was indicted for the offense of involuntary manslaughter in the Circuit Court of Preston County. He entered a plea of not guilty and moved for a bill of particulars, which was granted. The bill of particulars alleges that the State expected to show that the defendant was driving his truck "unlawfully and in an unlawful manner and as a direct proximate result thereof the said defendant inflicted injuries" upon the person of Mrs. Bucklew as a proximate result of which she died; that the evidence to support such charge would be: (a) That he drove his truck in a hazardous manner at a greater speed than was reasonably prudent under the circumstances; (b) that he drove across the center of the highway; (c) that he was driving under the influence of intoxicating liquor; and (d) that he was driving in a reckless and wanton manner.

The State introduced evidence to the effect that: The defendant was proceeding down Caddell Mountain in Preston County between eight and eight-thirty o'clock, P. M., on the night of June 28, 1957; it had been raining; he was coming "pretty fast"; as he came around a curve, his rear wheels skidded across the center line of the highway while the front wheels remained in the proper lane; the rear end of the truck "sideswiped" the Bucklew automobile, knocked it downhill and to the left a distance of approximately ten feet; Mrs. Bucklew was thrown out and sustained serious injuries; the truck then proceeded downhill and collided with another automobile driven by a third party; it was still daylight; none of the parties involved in the accident had turned their headlights on as yet; the road was slick; and several persons who were close to the defendant detected the odor of whiskey from his

,breath. A pathologist testified that Mrs. Bucklew died of a blood clot due to the injuries she received in the accident.

For the defendant, testimony was introduced that: The defendant was a cattle buyer in approximately five central and northern counties in West Virginia; he was operating a 1957 Ford truck which had been custom-built to his specifications; the defendant was accustomed to attending a cattle auction in Terra Alta once weekly, at which time he left his truck to have it checked over; the truck was tested on the day of the accident; and the compression and brakes were "O.K.". The mechanic at the garage saw the defendant leave the garage around eight o'clock; they had a short conversation and the defendant appeared normal; there was a load on the truck of twelve calves, twenty-three sheep and six hogs, amounting to 7,020 pounds which was considered a medium load. The mechanic, who also operated a wrecker truck and arrived at the scene of the accident shortly after it happened, testified that, upon examining defendant's truck, he found it to be in low third gear, and that the maximum speed of the truck in that gear would be twenty-five to thirty-five miles an hour on the steepest part of the mountain.

The defendant did not testify, but the officer who investigated the accident testified that he placed no charges against the defendant until after the death of Mrs. Bucklew.

The jury returned a verdict of guilty and the court entered judgment thereon, sentencing defendant to one year in the county jail, to which this Court granted a writ of error and supersedeas on March 10, 1958.

The assignments of error may be summarized as follows: (1) It was error to require defendant to put on his defense when the State had not shown that defendant was driving his truck unlawfully, as specified in the bill of particulars; (2) in requiring defendant to defend against four allegations of unlawful conduct when the State had not elected upon which it would rely, and, not having so

elected, did not prove all of the allegations set forth in the bill of particulars; (3) in refusing Defendant's Instructions Nos. 8 and 9; (4) in giving State's Instructions Nos. 3 and 4; and (5) in admitting the testimony with reference to the odor of alcohol, which was not relied upon by the State and resulted in prejudice to the defendant.

There is no merit in the contention that the State was required to elect as to which of the allegations set forth in the bill of particulars it would rely upon. The State is not required to elect in that regard, but is only bound not to go outside the allegations in the bill of particulars in proving its case against the defendant. Likewise, it was not error to refuse Defendant's Instructions Nos. 8 and 9. No. 8 would have informed the jury that if it found from all of the evidence in the case that the decedent met her death "as result of an unavoidable accident" it should find the defendant not guilty. There was no evidence in this case to support this instruction. No. 9 would have instructed the jury that if Mrs. Bucklew did not die as a result of any unlawful conduct on the part of the defendant, but died as a result of some other physical ailment not connected with the injuries received in the collision with defendant's truck, then the jury should find for the defendant. There was no evidence that decedent's death was not the result of the collision with defendant's vehicle, and there was uncontradicted evidence that the collision did cause her death. Therefore, the refusing of Defendant's Instruction No. 9 was not error since there was no evidence to support it.

State's Instruction No. 3 correctly defined the crime of involuntary manslaughter in accord with many decisions of this Court. Therefore, the giving of this instruction was not error. The assignment of error as to the giving of State's Instruction No. 4 raises the primary question at issue in this case, together with the assignment that the evidence does not support the verdict of the jury as a matter of law. Both the State and the defendant rely upon the comparatively recent decisions of this Court in *State* v.

*Craig,* 131 W. Va. 714, 51 S. E. 2d. 283 and *State* v. *Lawson,* 128 W. Va. 136, 36 S. E. 2d. 26, which will hereinafter be referred to as the Craig case or the Lawson case. Since the decisions in those two cases, the Legislature of this State has made comprehensive amendments to, and has reenacted the statutes applicable to the operation of vehicles upon public highways in this State, all of which are now contained in what the Legislature has designated as Chapter 17C of the Code. It is found under that same designation in Michie's 1955 Code of West Virginia. Of particular pertinence to the instance case is Section 1, Article 6, Chapter 17C, which reads in part as follows: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards, then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care. * * *" Although the language is slightly different, it is substantially the same as it was when this Court decided the *Craig* and *Lawson* cases. It was then designated Chapter 17, Article 8, Section 18, of the Code of West Virginia, 1931.

In the *Craig* case, this Court did not hold that the violation of this section, which resulted in the death of a human, could not be the basis of a conviction of involuntary manslaughter. What it held in that case was that the evidence was not sufficient to support the finding of the jury that the violation of this statute caused the decedent's death. In the opinion, the Court said: "* * * When regarded in its most unfavorable light, the conduct of the defendant in the operation of his automobile can not be held to constitute anything more culpable than negligence. In acting as he did, he did not violate any provision of the statute or commit an unlawful act or a lawful act in an unlawful manner." In the *Craig* case, this Court reaffirmed its holding in the *Lawson* case to the effect that a person may not be convicted of the offense of invol-

untary manslaughter solely upon evidence of simple negligence.

In the *Lawson* case, this Court made a comprehensive review of the law of involuntary manslaughter as it had been propounded by the previous decisions of this Court, and reviewed the Virginia cases, with particular emphasis upon those decisions prior to the formation of this State. At this point, it should be observed that the Legislature of this State has never undertaken to define the crime of involuntary manslaughter, or, for that matter, voluntary manslaughter. Therefore, in seeking definitions of those offenses, we can look only to the common law. The significant holding of this Court in the *Lawson* case is found in Point 4 of the Syllabus: "To the extent only that they tend to hold that the crime of involuntary manslaughter may be committed in the performance of a lawful act by simple negligence, the cases of *State* v. *Clifford,* 59 W. Va. 1, and *State* v. *Whitt,* 96 W. Va. 268, are disapproved." In the opinion, the Court said: "Then, if we trace applications of the common law definition of involuntary manslaughter, we find that some unlawful act on the part of a person charged with that crime is considered necessary to constitute the offence. 4 Blackstone, 189. Treatment of involuntary manslaughter in our own cases is apparently based on a departure from the definition employed by Blackstone. We do not think that departure should have been made, and so far as the cases of *State* v. *Clifford, supra,* and *State* v. *Whitt, supra,* tend to hold that a defendant may be convicted of involuntary manslaughter under charge and proof of simple negligence, they are disapproved and overruled.* * *" The pertinence of the next to the last paragraph of the opinion is such that it will be quoted in full: "On the whole we are of the opinion that the instruction which should have been given in this case was one telling the jury, in substance, that involuntary manslaughter could only be sustained upon a showing of the commission of an unlawful act, or the performance of a lawful act in an unlawful manner. We do not undertake to form the definition of that offence.

Apparently, there have already been too many. We simply mean to indicate that, in our view, an instruction should tell the jury that there must be either some unlawful act, or the performance of a lawful act in an unlawful manner, before a defendant can be convicted of involuntary manslaughter. As indicated above, violation of the statute, or wanton or reckless misconduct, and many other species of conduct, if established by the evidence, might justify a holding that a lawful act had been performed in an unlawful manner. For illustration, everyone has a lawful right to travel the highways of this State, but when anyone violates the statute law of the State regulating travel on the highways, he exercises his lawful privilege in an unlawful manner."

The plaintiff in error contends in his brief, and, by counsel, asserted in oral argument of this case, that the provisions of Chapter 17C, Article 6, Section 1, heretofore quoted, relate only to the negligent operation of a vehicle upon a public highway. However, Chapter 17C provides that the violation of this and other sections of that chapter are crimes and shall be punished as such. Furthermore, six witnesses, one of whom was called by the defendant, testified that they smelled the odor of some kind of alcoholic beverage upon the breath of the defendant immediately after the collision, and the witness McCrobie stated that at that time defendant "had the appearance of plain out being drunk." Of course, Chapter 17C makes the operation of a vehicle upon a public highway while the operator is under the influence of intoxicating liquor a criminal offense. The verdict is supported by the evidence. There was, of course, one witness who could have contradicted, and perhaps refuted, the inference arising from the testimony adduced on behalf of the State that the collision resulted from a violation of 17C-6-1, rather than a sudden, unforeseeable circumstance in which the defendant found himself. This witness, as he had a right to do, elected not to testify, and must necessarily bear the consequences of such election.

The judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*