STATE OF WEST VIRGINIA

*v.*

MARK S. VOLLMER

(No. CC909)

Decided November 13, 1979.

*Chauncey H. Browning*, Attorney General, *Michael G. Calgett*, Assistant Attorney General, for plaintiff.

*McCamic & McCamic, Jolyon W. McCamic* for defendant.

MILLER, JUSTICE:

This case presents the certified question[1] of whether the State, in charging an offense arising out of an auto-

---

[1] The State does not contest the certification in this case, which was effected by the circuit court. This Court has not construed in a

mobile accident resulting in a death, must proceed under the negligent homicide statute, W. Va. Code, 17C-5-1,[2] or whether it may charge involuntary manslaughter. We conclude that the State may elect either avenue.

The defendant argues that only W. Va. Code, 17C-5-1, applies, since it is a specific enactment covering the offense, and since the statutory crime of negligent homicide contains different elements of proof than does the crime of involuntary manslaughter. In this regard, the defendant cites Syllabus Point 3 of *State v. Lough*, 143 W. Va. 838, 105 S.E.2d 538 (1958):

> "A verdict of guilty of involuntary manslaughter will not be disturbed on writ of error where the evidence shows beyond a reasonable doubt that the unintentional death of deceased was caused by accused while engaged in an unlawful act or the performance of a lawful act in an unlawful manner."

---

criminal case that portion of W. Va. Code, 58-5-2, which was amended in 1967 to read, "[a]ny question arising ... upon the jurisdiction of the circuit court of a person or subject matter ...." We have held, however, that certification does not lie for the dismissal of an indictment. *State v. Brown*, ____ W. Va. ____, 223 S.E.2d 193 (1976). We need not assess the parameters in the present case, except to state that the issue at hand does involve a challenge to jurisdiction in the sense that the involuntary manslaughter charge in an automobile death case is claimed to have been repealed by the negligent homicide statute. Prohibition may well have been a more appropriate remedy, but the circuit court judge can be commended for not wishing to have the point become a possible basis for reversible error after a full trial.

[2]W. Va. Code, 17C-5-1, provides:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by fine of not less than one hundred dollars nor more than one thousand dollars, or by both such fine and imprisonment.

"(c) The commissioner shall revoke the license or permit to drive and any nonresident operating privilege of any person convicted of negligent homicide."

The defendant argues that under *Lough,* he could be convicted of involuntary manslaughter if the State only proved that he had violated a motor vehicle statute (an unlawful act) resulting in a death, even though the violation of the statute occurred through simple negligence without intent to cause death or bodily injury. On the other hand, the argument runs, such facts would not be sufficient to constitute the statutory crime of negligent homicide, which requires proof that the vehicle was driven "in reckless disregard of the safety of others"—an obviously higher standard than mere negligence.

*Lough's* syllabus must be read in light of its opinion, which relied extensively on *State v. Lawson,* 128 W. Va. 136, 36 S.E.2d 26 (1945). *Lawson* contained the following syllabus points:

> "3. The giving of an instruction, at the instance of the State, which, in effect, tells the jury that a defendant may be found guilty of involuntary manslaughter for a death growing out of an automobile collision on a public highway, upon showing, beyond all reasonable doubt, that the defendant was driving his automobile on his left side of the highway at the time of the collision, and that such driving was the sole and proximate cause of the collision, and that the death of another person resulted therefrom, is error.

> "4. To the extent only that they tend to hold that the crime of involuntary manslaughter may be committed in the performance of a lawful act by simple negligence, the cases of State v. Clifford, 59 W. Va. 1, 52 S.E. 981, and State v. Whitt, 96 W. Va. 268, 122 S.E. 742, are disapproved."

A reading of *Lawson* demonstrates the confusion that attends the phrase "an unlawful act or the performance of a lawful act in an unlawful manner."[3] The genesis of the confusion is the word "unlawful."

---

[3]From a logical standpoint the phrase seems to contain a redundancy, since the performance of a lawful act in an unlawful manner makes that act itself unlawful.

In this context, LaFave and Scott in *Criminal Law* § 79 (1972), at 594, use the term "unlawful-act involuntary manslaughter." After an extensive discussion of its origin and development in the common law, they conclude:

> "Most jurisdictions punish, as involuntary manslaughter, death-causing conduct in the commission or attempted commission of an unlawful act (generally a misdemeanor), especially if that act is *malum in se* or (what tends to be the same thing) if that act involves a danger of death or serious bodily injury to another person or to others. If the unlawful act is *malum prohibitum* the defendant generally is held not guilty of manslaughter unless the death is the foreseeable consequence of his conduct in committing the act. ..."[4]

Much the same conclusion can be found in 40 Am. Jur. 2d *Homicide* § 77:

> "The general principle that an unintentional homicide is a criminal offense where occasioned by a person engaged, at the time, in an unlawful act, is subject to the important qualification that if the act in question is not inherently dangerous and there is no negligence in its performance, there is no criminal liability unless the act was malum in se and not merely malum prohibitum, although in some cases the courts have not observed this distinction.
>
> "An offense malum in se is properly defined as one which is naturally evil, as adjudged by the sense of a civilized community. An act which is

---

[4]LaFave & Scott define the terms *malum in se* and *malum prohibitum* in the same work at page 29 as follows:

"It has been said that a crime of which a criminal intent is an element is *malum in se*, but if no criminal intent is required, it is *malum prohibitum*; and that generally a crime involving 'moral turpitude' is *malum in se*, but otherwise it is *malum prohibitum*. In a general way, it may be said that crimes which are dangerous to life or limb are likely to be classified as *mala in se*, while other crimes are more likely to be considered *mala prohibita*."

malum prohibitum is wrong only because made so by statute. . . ."

The "unlawful" problem in involuntary manslaughter is more attenuated in motor vehicle homicides because the violation of the traffic regulation statutes contained in W. Va. Code, 17C-1-1, *et seq.*, is a misdemeanor under W. Va. Code, 17C-18-1, unless a higher penalty is specifically provided. *See State v. Jeffers,* _____ W. Va. _____, 251 S.E.2d 227, 229 (1979). Consequently, the operation of a motor vehicle in violation of any of these statutes is technically an unlawful act, but it must be remembered that, in the main, these motor vehicle statutes involve acts which are *mala prohibita,* and not acts which are, *per se,* dangerous to life and limb.[5]

Our cases involving an involuntary manslaughter charge arising from a death resulting from the operation of a motor vehicle follow the general law and require something more than an act of ordinary negligence or the violation of a motor vehicle statute to sustain the conviction. This is manifested by the following statement from *Lawson:*

> "This rule [that more than simple negligence is required] would do nothing more than require the State to show that the act, or the manner of the performance of the act, for which conviction is sought is unlawful and culpable and something more than the simple negligence, so common in everyday life, in which there is no claim that anyone has been guilty of wrong-doing." [128 W. Va. at 148, 36 S.E.2d at 32]

*Lawson* placed substantial reliance on Virginia cases dealing with involuntary manslaughter charges in motor vehicle accidents resulting in death. In *King v. Commonwealth,* 217 Va. 601, 606-607, 231 S.E.2d 312, 316 (1977), the court discussed its standard at some length:

---

[5]In civil cases we have traditionally held that the violation of the motor vehicle statutes is *prima facie* evidence of negligence. *Spurlin v. Nardo,* 145 W. Va. 408, 114 S.E.2d 913 (1960).

"Inadvertent acts of negligence without recklessness, while giving rise to civil liability, will not suffice to impose criminal responsibility. Thus, we have held that mere failure to keep a proper lookout is insufficient to support a conviction of involuntary manslaughter. *Lewis v. Commonwealth, supra,* 211 Va. [684] at 687-88, 179 S.E.2d [506] at 509 [1971]. Intentional, willful, and wanton violation of safety statutes, resulting in death, however, will justify conviction of involuntary manslaughter. *See State v. Cope,* 204 N.C. 28, 167 S.E. 456 (1933). The degree of negligence must be more than ordinary negligence. *Smith v. Commonwealth,* 213 Va. 781, 784, 195 S.E.2d 845, 847-48 (1973); *Fadely v. Commonwealth,* 208 Va. 198, 202, 156 S.E.2d 773, 776 (1967); *Zirkle v. Commonwealth,* 189 Va. 862, 868, 55 S.E.2d 24, 28 (1949); *Bell v. Commonwealth, supra,* 170 Va. [597] at 615, 195 S.E. [675] at 681.

. . . .

"We conclude that involuntary manslaughter arising from the operation of a motor vehicle should be predicated solely upon criminal negligence proximately causing death. Accordingly, we define involuntary manslaughter in the operation of a motor vehicle as the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless-disregard of human life."

In its most recent involuntary manslaughter case involving a motor vehicle, *Jenkins v. Commonwealth,* 255 S.E.2d 504 (Va. 1979), the court followed *King* in holding that the standard is "negligence so gross, wanton, and culpable as to show a reckless disregard of human life." [255 S.E.2d at 506]

Thus, it can be seen that the Virginia standard for involuntary manslaughter does not differ materially from our own construction in *Lawson.* Nor does this rule seem different from our statutory negligent homicide

standard of "reckless disregard of the safety of others."
W. Va. Code, 17C-5-1(a).[6]

This Court has not had occasion to discuss our statutory crime of negligent homicide. The crime of negligent homicide in the operation of a motor vehicle varies among the statutes by virtue of the particular statute, and two general categories emerge. The first consists of those statutes where simple negligence is stated to be sufficient to substantiate the crime.[7] The courts in those jurisdictions generally hold that death resulting from a negligent act in operating a motor vehicle is sufficient to constitute the crime. Annot., 20 A.L.R.3d 473 (1968). The second category consists of those statutes, like ours, which define the crime so as to require more than simple negligence. Annot., 52 A.L.R.2d 1337 (1957).[8]

---

[6]It appears that Virginia does not have a negligent homicide statute, and therefore its cases in this area are brought under the common law crime of involuntary manslaughter.

[7]Typical of such statutes is that of Michigan:

"Any person who, by the operation of any vehicle upon any highway, or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor ...." [M.C.L.A. § 750.324]

The Michigan courts have construed this provision as setting a standard of ordinary negligence. *People v. McKee*, 15 Mich. App. 382, 166 N.W.2d 688 (1968); *People v. McMurchy*, 249 Mich. 147, 228 N.W. 723 (1930).

[8]This dichotomy between the two types of statute is summarized in 7 Am.Jur.2d *Automobiles and Highway Traffic* § 290 (1963):

"In some jurisdictions the causing of a death by the driving of any vehicle in reckless, wilful, or wanton disregard of the safety of others is expressly declared by statute to be involuntary manslaughter, provided the death was the proximate result of such misconduct. Something more than ordinary negligence on the part of a driver is required to convict of manslaughter under such a statute. The conduct which brings an accused within the statute is recklessness or indifference incompatible with a proper regard for human rights. However, where a statute provides that manslaughter by motor vehicle is committed by 'driving in a negligent manner,' which causes injury to another proximately resulting in

We conclude that the plain wording of our negligent homicide statute, which requires the driving of "[a] vehicle in reckless disregard of the safety of others," means that more than negligence is required. It is compatible with the involuntary manslaughter standard set in *Lawson*, where we required the act to be "unlawful and culpable and something more than ... simple negligence." [128 W. Va. at 148, 36 S.E.2d at 32]

The defendant cites a number of cases where the courts have determined that a negligent homicide statute must be deemed to have impliedly repealed the involuntary manslaughter crime as to a death resulting from a motor vehicle accident. However, in each of these cases the court was confronted with a statutory scheme under which involuntary manslaughter differed either in its elements or in its penalty, or both, from the negligent homicide statute. *State v. Morf*, 80 Ariz. 220, 295 P.2d 842 (1956); *State v. Biddle*, 45 Del. 244, 71 A.2d 273 (Ct. Oyer & Terminer 1950); *State v. Young*, 357 So.2d 416 (Fla. Dist. Ct. App. 1978), *rev'd*, 371 So.2d 1029 (1979); *State v. Davidson*, 78 Idaho 553, 309 P.2d 211 (1957); *State v. London*, 156 Me. 123, 162 A.2d 150 (1960); *State v. Gibson*, 4 Md. App. 236, 242 A.2d 575 (1968); *State v. Hagge*, 224 N.W.2d 560 (N.D. 1974); *Atchley v. State*, 473 P.2d 286 (Okla. Crim. App. 1970); *State v. Collins*, 55 Wash. 2d 469, 348 P.2d 214 (1960); *Thomas v. State*, 562 P.2d 1287 (Wyo. 1977).

We are not confronted with such a situation in the present case, since both crimes carry the same elements and the same penalty—imprisonment for not more than one year or a fine of not less than one hundred nor more than one thousand dollars, or both, in the discretion of

---

death, the court is not at liberty to add the qualification that the act of driving must have been a wanton or reckless disregard of human safety or life in order to be punishable."

the court. W. Va. Code, 17C-5-1(b), and W. Va. Code, 61-2-5.[9]

Concluding from the foregoing law that our involuntary manslaughter crime carries the same elements and the same penalty as our negligent homicide statute in regard to a homicide arising from the operation of a motor vehicle, we hold that the State may charge the defendant with either crime.

The certified question having been answered, this case is remanded for further proceedings in accordance with this opinion.

*Answered and remanded.*

---

[9]We recognize that W. Va. Code, 61-2-5, does not set a minimum fine of one hundred dollars as does W. Va. Code, 17C-5-1, but we do not consider this difference to be significant.