387 S.E.2d 563

**STATE of West Virginia**

v.

**Daniel Merritt STOREY.**

**No. 18939.**

Supreme Court of Appeals of
West Virginia.

Dec. 8, 1989.

T. Timothy DiPiero and Lonnie C. Simmons, DiTrapano & Jackson, Charleston, for Daniel Merritt Storey.

C. Terry Owen and Jeffrey L. Hall, Charleston, for the State.

PER CURIAM:

The defendant in this proceeding, Daniel Merritt Storey, was sentenced to six months and one day in the Nicholas County jail for negligent homicide. On appeal, he claims that there was insufficient evidence to support the conviction, that the trial court erred in giving two of the State's instructions, and that the court erred in refusing to disqualify several prospective jurors for cause. After reviewing the record, this Court finds that the defendant's assertions are without merit and affirms the judgment of the circuit court.

On August 17, 1986, Melinda K. White, who was driving north on a two-lane road, attempted to turn left across the road at an intersection. The intersection was at the bottom of a hill a short distance from where the road which she was trying to cross curved. At the time, the defendant, who was a professional truck driver, and who was also driving north, was attempting to pass a string of four or five vehicles which were on the road behind Ms. White. The defendant did not see Ms. White's turning vehicle until shortly before he arrived at the intersection, and when he did see her, he was unable to stop or to end his passing maneuver and return to the proper traffic lane. His truck consequently collided with Ms. White's vehicle. She was killed, and her three passengers were injured.

The defendant was subsequently indicted and tried for negligent homicide. During trial the State took the position that he had acted in reckless disregard for the safety of others in attempting to pass a line of traffic while going down a hill when his view of the road at the bottom of the hill was at least partially obstructed by a curve and when there was some indication that there was an intersection ahead.

Evidence adduced during trial showed that the accident occurred in an area where

the road had been newly paved. According to the State Trooper who investigated the accident: "It was brand new pavement, real black in color. It was very obvious that it was brand new." Portions of the road were not marked with normal, double, no-passing lines. Instead, the center of the newly paved section was marked by a single, dotted line of yellow tape.[1] One hundred and fifty-four feet from the intersection where the collision occurred, however, the new pavement ended and a double, yellow, no-passing line began.

There was also evidence that there were signs before the intersection where the collision occurred indicating that there was a turn-off or intersection a short distance ahead. For instance, some distance away from the intersection there was a sign indicating "Gas and food one-half mile." About a tenth of a mile from the intersection was a sign that said "Big Ditch Lake," with an arrow pointing right. Approximately 154 feet before the intersection was a sign stating "Birch River Road and Cowen" with arrows pointing left and right.

At the conclusion of the trial, a jury found that the defendant guilty of negligent homicide.

On appeal, the defendant's first contention is that the trial court erred in refusing to grant his motion for acquittal based upon insufficiency of the evidence. He essentially claims that the evidence failed to show that he acted in such a reckless or wanton manner as to warrant the imposition of a criminal sanction.

 The test of when evidence is insufficient to support a verdict of guilty in a criminal case is set forth in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), as follows:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To war-

rant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

 In *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979), this Court indicated that West Virginia's negligent homicide and involuntary manslaughter provisions involve the same questions when a homicide results from the operation of a motor vehicle. When there is such a homicide, the State may elect to proceed under either a negligent homicide or an involuntary manslaughter theory. The Court also indicated that the test of recklessness required under either theory is essentially the same.

> Our negligent homicide statute, W.Va. Code, 17C–5–1, requires the driving of "[a] vehicle in reckless disregard of the safety of others," and this means that more than ordinary negligence is required. It is compatible with the involuntary manslaughter standard set in *State v. Lawson*, 128 W.Va. 136, 36 S.E.2d 26 (1945).

Syllabus point 2, *State v. Vollmer, Id.*

In *State v. Lawson* the Court discussed the test of recklessness at some length:

> We think it fair to assume that the word "negligent" or "negligently", when used in the definition of involuntary manslaughter has been intended to imply some character of negligence violative of a statute, or of an improper, wanton or reckless nature such as would, in itself, have been unlawful, even in the absence of a statute making it so."

128 W.Va. at 147, 36 S.E.2d at 31. The Court proceeded to examine what would constitute recklessness sufficient to support involuntary manslaughter conviction in an automobile accident situation and indicated that violation of a traffic statute would constitute such recklessness:

> [A]n instruction should tell the jury that there must be either some unlawful act,

---

1. There is some indication that the dotted line was not the usual intermittent line used to indi-

cate a passing zone, but a set of shorter markings designed to guide a paint truck.

or the performance of a lawful act in an unlawful manner, before a defendant can be convicted of involuntary manslaughter. As indicated above, violation of the statute, or wanton or reckless misconduct, and many other species of conduct, if established by the evidence, might justify a holding that a lawful act has been performed in an unlawful manner. For illustration, everyone has a lawful right to travel the highways of this State, but when anyone violates the statute law of the State regulating travel on the highways, he exercises his lawful privilege in an unlawful manner.

128 W.Va. at 149–50, 36 S.E.2d at 32.

*West Virginia Code*, 17C–7–6(a), specifically governs passing on public highways and provides that:

> No vehicle shall at any time be driven to the left side of the roadway under the following conditions: (1) When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction; (2) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing; ...

Even in the absence of statute of this sort, it has been recognized that passing where a view is obstructed amounts to the degree of negligence sufficient to justify an involuntary manslaughter conviction. *See e.g., State v. Carter*, 451 S.W.2d 340 (Mo.1970); *State v. Rice*, 58 N.M. 205, 269 P.2d 751 (1954).

As previously indicated, in assessing the question of whether there was sufficient evidence to support the jury's verdict, this Court must view the evidence in the light most favorable to the prosecution. In the present case there was evidence that the road on which the fatal collision occurred curved before it reached the point of collision, and the jury reasonably could have concluded that the view of the intersection was obstructed by the curve. There were also signs in the area from which the jury could have concluded that a prudent driver would have known that the road was approaching an intersection or a turn-off. In spite of these circumstances, the defendant undertook to pass a long string of vehicles, an action which is clearly more hazardous and more time-consuming than attempting to pass a single vehicle. Clearly, he did not engage in the maneuver in such a way as to complete it before he arrived in the area potentially obscured by the curve and clearly marked by double lines as a no-passing zone. He likewise could not complete it before he reached the intersection.

*W.Va.Code*, 17C–7–6(a), prohibits passing where a driver's view is obscured by a curve in a highway and where there might be a possibility of a collision. It also prohibits passing within one hundred feet of an intersection. *State v. Vollmer* and *State v. Lawson, supra*, indicate that actions violative of traffic safety statutes can constitute recklessness sufficient to support a negligent homicide verdict.

■ In viewing the totality of the evidence in the present case, this Court cannot conclude that there was insufficient evidence to support the jury's verdict or that the trial court erred in refusing to direct a verdict of acquittal for the defendant. He clearly attempted to pass in an area where his ultimate view was obstructed. In so doing, he violated a traffic-safety statute. Before he reached the intersection where the collision occurred he was in a no-passing zone. From the signs that were present, the jury could have concluded that if he had been driving in a prudent and non-reckless fashion he should have known of the approaching intersection and the accompanying no-passing zone. The jury likewise could have concluded that it was recklessness to attempt to pass a large number of vehicles under the circumstances.

■ The defendant argues that the improper marking of the highway should be considered a circumstance depriving his passing of the requisite wantonness or recklessness to support a negligent homicide conviction.

In a somewhat similar case, *Petcosky v. Bowman*, 197 Va. 240, 89 S.E.2d 4 (1955), the Virginia court addressed the question

of whether the fact that a road was newly paved and not yet properly marked relieved a defendant of liability for driving improperly on a road. The Virginia court dismissed that argument and, in effect, recognized that a driver had the obligation to drive prudently, regardless of the absence of proper markings. The Court, in fact, concluded that absence of proper markings on a newly paved highway should have been a warning of increased danger.

On appeal the defendant also claims that the trial court erred in granting the State's Amended Instructions Nos. 2 and 3 dealing with collateral crimes. Those instructions indicated that if the jury found that the defendant violated statutes governing highway safety, then the violations could be considered in determining if the defendant acted recklessly. Instruction No. 3 specifically cautioned that, while a violation could be considered in determining if the defendant acted recklessly, it could not be considered as proving the ultimate question in the case, the defendant's guilty of negligent homicide.

The defendant claims that the State, in response to his motion for a bill of particulars, did not notify him that it was going to allege a number of traffic offenses in addition to the negligent homicide charge. He claims that State's Instruction No. 2 was misleading and placed undue influence on certain facts in the case because it did not take into account the fact that there were improper markings on the road. He also argues that State's Instruction No. 3 discusses three specific traffic offenses for which he was never cited and of which he was never informed by the State prior to trial and that this instruction ignored the fact that the road was improperly marked and that the intersection was unmarked.

As previously indicated, this Court, in line with the thinking of the Virginia court in *Petcosky v. Bowen, supra,* does not view the fact that a road is newly paved, and not yet properly marked, as a circumstance excusing a driver from driving safely and in accordance with road safety statutes. Rather clearly, as indicated in *State v. Vollmer, supra,* and *State v. Lawson, su-*

*pra,* the question of whether the defendant was violating road safety statutes has a central bearing on the question of whether he was acting recklessly. This is essentially what the challenged instructions told the jury.

■ Although the defendant was not notified in the State's bill of particulars that the specific statutes covered in State's Instructions Nos. 2 and 3 would be involved during trial, he was clearly informed before trial that a central issue during trial would be whether he acted recklessly while engaged in passing on the day of the fatal accident. As indicated in *State v. Vollmer, supra,* the principles enunciated in *State v. Lawson, supra,* relating to recklessness should guide the State in determining whether a defendant was reckless in a negligent homicide case. Rather clearly, *State v. Lawson* contemplates that action violative of a traffic statute should be brought to the jury's attention. *State v. Lawson* specifically stated:

> [A]n instruction should tell the jury that there must be either some unlawful act, or the performance of a lawful act in an unlawful manner, before a defendant can be convicted of involuntary manslaughter.

128 W.Va. at 149, 36 S.E.2d at 32.

In a somewhat analogous area the Court has indicated that failure to disclose evidence in response to a discovery motion should be considered prejudicial only where the evidence hampers the preparation and presentation of the defendant's case. *State v. Hobbs,* 178 W.Va. 128, 358 S.E.2d 212 (1987); *State v. Ellis,* 176 W.Va. 316, 342 S.E.2d 285 (1986); *State v. Fauber,* 175 W.Va. 324, 332 S.E.2d 625 (1985); *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982); *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980).

In the case presently before the Court, the defendant was informed prior to trial of the evidence supporting the giving of the instructions which he challenges. Certainly any attorney preparing a defense would be aware that under *State v. Vollmer, supra,* a key test of recklessness involves the question of whether the defendant vio-

lated a traffic-safety statute. The jury was plainly cautioned to consider the statutes only in conjunction with the question of recklessness. The defendant was not called upon to defend charges based on the statutes mentioned in the instruction.

Overall, this Court believes that the giving of the instructions was within the parameters set forth in *State v. Lawson, supra,* and that the defendant's claim of surprise is without merit.

The defendant's final assertion is that the trial court erred in refusing to disqualify several prospective jurors for cause.

One prospective juror, Linda Dorsey, was an employee of the Department of Human Services who was a complaining witness in several cases involving clients represented by the defendant's trial counsel. Another prospective juror, Daniel Martin, was a friend of Robert Snyder, who was the victim's boyfriend and who testified at trial. Prospective juror Janet Childers was in the victim's home on one occasion and her son had previously dated one of the victim's sisters. Prospective juror Daniel Hamon knew the victim's family and the victim's father had been his boss. Prospective juror John Eakle stated that he had read every newspaper account of the case.

In syllabus point 2 of *State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983), this Court indicated that:

"The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syllabus Point 7, *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982); Syllabus Point 3, *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981); Syllabus Point 1, *State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974).

In the present case, there was extensive voir dire of each challenged venireman. During the voir dire, each prospective juryman indicated that he could judge the case without bias or prejudice. For instance, prospective juror Daniel Martin was challenged because he was a friend of a witness called by the State. On voir dire, he indicated that he could serve objectively.

Normally, friendship is not a ground for disqualification where the juror demonstrates objectivity. *Jordan v. Holland,* 174 W.Va. 230, 324 S.E.2d 372 (1984).

Prospective jurors Childers and Hamon were challenged because they knew the victim's family, some of whom were witnesses for the State. Like prospective juror Martin, they, on voir dire, indicated that they would objectively view the evidence. Generally, friendship with a witness or knowledge of a victim's family is not a *per se* disqualification. *See State v. Dushman,* 79 W.Va. 747, 91 S.E. 809 (1917).

Prospective juror Dorsey was challenged because she was employed by a State agency which had filed complaints against defense counsel's clients. Dorsey was not an employee of a prosecutorial agency and she was not a closely related member of the prosecution at the defendant's trial. It was not shown that she had even a social relationship with an employee of a law enforcement agency. She, like the other challenged prospective jurors, indicated that she could view the evidence objectively.

Lastly, prospective juror John Eakle indicated that he had read newspaper accounts of the incident in which the defendant was involved. He assured the trial court that he would not let his newspaper knowledge affect his ability to sit objectively as a juror.

This Court believes that the defendant failed to show that the challenged jurors could not render a verdict solely upon the evidence under the instructions of the case and that, under the rule set forth in syllabus point 2 of *State v. White, supra,* the defendant has not shown that the trial court erred in denying defense counsel's motions to disqualify the proposed jurors.

For the reasons stated, the judgment of the Circuit Court of Nicholas County is affirmed.

Affirmed.