408 S.E.2d 91

**STATE of West Virginia, Plaintiff Below, Appellant,**

v.

**Karen Sue DeBERRY, Defendant Below, Appellee.**

No. 19990.

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 25, 1991.

---

Edmund J. Matko, David A. Jones, Harrison County Prosecutor's Office, Clarksburg, Joanna I. Tabit, Deputy Atty. Gen., Appellate Div., Charleston, for the plaintiff below, appellant.

James M. Pool, Clarksburg, for the defendant below, appellee.

McHUGH, Justice:

This case is before the Court upon the appeal of the State of West Virginia. The appellee is Karen Sue DeBerry, the defendant below (hereinafter "defendant").

## I

This appeal arises from the dismissal of an indictment in the Circuit Court of Harrison County. Because there was no trial, the record is very brief, with little factual development. The State's allegations, however, are as follows: In May, 1989, the defendant went to a party at her neighbor's house and took her twelve-year-old daughter, Valerie, with her. The defendant knew that alcohol would be served at this party.

At the party, the defendant encouraged her daughter to drink alcohol and to play "drinking games" with adults who were at the party. Valerie consumed alcohol until she lost consciousness.

The defendant apparently arranged for someone else to carry Valerie home and put her in bed, while she (the defendant) engaged in sexual intercourse with another guest at the party.

The next morning, the defendant found Valerie dead in her bedroom. The medical examiner determined that the cause of death was "acute ethanol intoxication" resulting from vast consumption of alcohol.

The defendant was charged in a three-count indictment. The first count charged the defendant and a William Thomas Reaser with first degree murder (by administering poison).[1] The second count charged the defendant with causing serious bodily injury to her child by felonious neglect, pursuant to *W. Va. Code*, 61–8D–4(b) [1988]. The third count of the indictment charged Reaser with aiding and abetting the defendant's violation of *W. Va. Code*, 61–8D–4(b) [1988].[2]

The second count of the indictment is at issue in this case, specifically, the constitutionality of *W. Va. Code*, 61–8D4(b) [1988], which makes it a felony for a parent, guardian, or custodian to neglect a child, and by such neglect, cause the child serious bodily injury. We must necessarily address the constitutionality of *W. Va. Code*, 61–8D–1(6) [1988] as well, which sets forth the definition of "neglect," as that term is used in *W. Va. Code*, 61–8D–4(b) [1988].

On February 13, 1990, the defendant moved to dismiss the indictment on the grounds that *W. Va. Code*, 61–8D–4(b) [1988] is unconstitutionally vague. The circuit court agreed, and, on November 28, 1990, an order was entered dismissing the indictment.[3]

---

**1.** *See W. Va. Code*, 61–2–1, as amended.

**2.** *See W. Va. Code*, 61–11–6 [1931].

**3.** The hearing on the motion to dismiss was held on November 1, 1990. On November 2, 1990, the *State* moved to dismiss the first count of the indictment. The *defendant* opposed the State's motion. The record before this Court does not indicate why the State desired dismissal of the indictment's first count, nor why the defendant would *oppose* such a motion. However, during the oral argument of this case, counsel for the defendant asserted that the defendant objected to the motion to dismiss because the defendant was prepared to prove that she did not commit murder. In so asserting, counsel for the defendant, during oral argument, stated that the defendant's daughter was murdered, but not by the defendant. Counsel also asserted that the autopsy revealed semen in the victim's vagina, a blood alcohol content of .17%, and that the examining pathologist was not even certified. In any event, the dismissal of the first degree murder count of the indictment has no bearing on the issue that confronts us in this case, specifically, the constitutionality of *W. Va. Code*,

---

## II

*W. Va. Code*, 61–8D–4 [1988] provides, in pertinent part:

> (b) If any parent, guardian or custodian shall *neglect* a child and by such neglect cause said child *serious bodily injury*, as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than three thousand dollars and imprisoned in the penitentiary not less than one nor more than ten years, or both such fine and imprisonment.

(emphasis supplied)

" 'Neglect' " is defined as "the *unreasonable failure* by a parent, guardian, or any person voluntarily accepting a supervisory role towards a minor child to exercise a *minimum degree of care* to assure said minor child's physical safety or health." *W. Va. Code*, 61–8D–1(6) [1988] (emphasis supplied).[4]

In dismissing the indictment, the circuit court held that the definition of the word "neglect," as that term is set forth in *W. Va. Code*, 61–8D–1(6) [1988] is unconstitutionally void for vagueness, in violation

---

61–8D–4(b) [1988] and *W. Va. Code*, 61–8D–1(6) [1988].

**4.** *W. Va. Code*, 61–8D–4(b) [1988] also refers to the term "serious bodily injury," as that term is defined by *W. Va. Code*, 61–8B–1(10) [1986], which provides: ." 'Serious bodily injury' means bodily injury which creates a substantial risk of death, which causes serious or prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."

*W. Va. Code*, 61–8D–4(a) [1988] is essentially the same as subsection (b), except subsection (a) deals with only "bodily injury," and not *"serious bodily injury."* The penalties under subsection (a) are less severe as well.

Subsection (c) of *W. Va. Code*, 61–8D–4 [1988] prohibits application of that section where the neglect is "due primarily to a lack of financial means on the part of" the parent.

Subsection (d) prohibits application to a parent who, due to conflicting tenets and practices of religion, "fails or refuses, or allows another person to fail or refuse, to supply a child under the care, custody or control of such parent, guardian or custodian with necessary medical care[.]"

of principles of due process.[5] Thus, the circuit court agreed with the defendant's contention that the use of that term in *W. Va. Code*, 61–8D–4(b) [1988] is so indefinite and uncertain that it does not inform the accused as to the act or acts necessary to constitute the offense charged with such certainty that the defendant would be able to determine whether or not she had violated the law at the time the alleged offense occurred. We do not agree with the circuit court's judgment in this case, and, accordingly, we reverse the circuit court's order.

### III

■ In arguing before the lower court that *W. Va. Code*, 61–8D–4(b) [1988] and *W. Va. Code*, 61–8D–1(6) [1988] are unconstitutionally vague, the defendant attacked the alleged ambiguity of the terms "unreasonable failure," and "minimum degree of care," as those terms are used in the definition of "neglect." *W. Va. Code*, 61–8D–1(6) [1988]. The State, on the other hand, asserts that *W. Va. Code*, 61–8D–4(b) [1988] establishes a standard of *ordinary* negligence.

In support of its contention, the State points to the definition of the term "unreasonable," which means, *inter alia*, unwise, senseless, or not rational. *Black's Law Dictionary* 1379 (5th ed. 1979). The State further looks to the use of the term "minimum degree of care," as that term is used in the statutory definition of "neglect." *W. Va. Code*, 61–8D–1(6) [1988]. "Minimum," the State points out, is the least quantity that is possible or assignable in a particular case. *Black's Law Dictionary* 898 (5th ed. 1979).

The defendant contends that the State wrongfully equates *neglect* with *negligent*, arguing that in a statutory crime, the element of intent may only be dispensed with where the legislature has clearly expressed so in the statute. This Court has held: "The legislative purpose to dispense with the element of intent in a statutory crime

must be clearly expressed." Syl., *State v. Great Atlantic & Pacific Tea Co. of America*, 111 W.Va. 148, 161 S.E. 5 (1931).

The statute at issue in this case does not require intent because it sets forth a standard of neglect. Although we do not use the words neglect and negligence interchangeably, a comparison to criminal negligence is illustrative of our conclusion that intent is not required to obtain a conviction under *W. Va. Code*, 61–8D–4(b) [1988]. "There can be no attempt to commit a crime the gravamen of which is negligent conduct. By definition, the actor must *intend* to commit the target crime. His *intent* to commit a *negligent* act would be a contradiction in terms." IV C. Torcia, *Wharton's Criminal Law* § 741, at 569 (14th ed. 1981) (emphasis supplied).

We agree with the State's contention that *W. Va. Code*, 61–8D–4(b) [1988] and *W. Va. Code*, 61–8D–1(6) [1988] are not ambiguous. Clearly, the legislature intended to impose a standard of neglect, as opposed to requiring intent, by enacting *W. Va. Code*, 61–8D–4(b) [1988]. Because this statute involves neglect in a criminal context, again we view the law of criminal negligence as instructive.

There can be no intent to commit an unlawful act when the underlying conduct constitutes culpable negligence. Criminal negligence occurs in those instances in which neither specific nor general criminal intent is present but there exists such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances. Criminal negligence is of a *higher degree* than is required for civil liability and *requires significantly more than ordinary tort negligence.*

22 C.J.S. *Criminal Law* § 38, at 44 (1989) (emphasis supplied) (footnotes omitted).

---

**5.** Due process principles are contained in section 1 of the fourteenth amendment to the *United States Constitution*, which provides, in part, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of

law[,]" and article III, section 10 of the *West Virginia Constitution*, which similarly provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

*See Eslava v. State*, 473 So.2d 1143, 1147 (Ala.Crim.App.), *cert. denied*, 473 So.2d 1143 (Ala.1985).[6]

Similarly, other states, in their criminal child abuse statutes, include the term "negligence" therein. For example, in *State v. Lucero*, 87 N.M. 242, 531 P.2d 1215, *cert. denied*, 87 N.M. 239, 531 P.2d 1212 (1975), the court held that a criminal child abuse statute does not require proof of criminal intent. Rather, as the court pointed out, "[t]he Legislature has the authority to make a negligent act a crime as well as an intentional one." 87 N.M. at 245, 531 P.2d at 1218.[7] *See also People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977); *see generally*, annotation, *Validity and Construction of Penal Statute Prohibiting Child Abuse*, 1 A.L.R.4th 38, § 12[b] (1980 & Supp.1990).

Accordingly, in order to obtain a conviction under *W.Va.Code*, 61–8D–4(b) [1988], the State must prove that the defendant neglected a minor child within the meaning of the term "neglect," as that term is defined by *W.Va.Code*, 61–8D–1(6) [1988], which definition is "the unreasonable failure by a parent, guardian, or any person voluntarily accepting a supervisory role towards a minor child to exercise a minimum degree of care to assure said minor child's physical safety or health." Furthermore, the State must prove that such neglect caused serious bodily injury. However, there is no requirement to prove criminal intent in a prosecution under *W.Va.Code*, 61–8D–4(b) [1988].

## IV

■ As for the State's contention that the terms used in *W.Va.Code*, 61–8D–4(b) [1988] and *W.Va.Code*, 61–8D–1(6) [1988] are not unconstitutionally vague, we turn to well established constitutional principles.

In *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974), this Court set forth the requirements for a criminal statute to pass constitutional muster, where that statute is challenged upon grounds of vagueness. In syllabus point 1 thereto, we held: "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." We have recognized that this "vagueness standard is well settled[.]" *State v. Less*, 170 W.Va. 259, 263, 294

---

**6.** We note that *W.Va.Code*, 61–8D–4(b) [1988] does not establish a standard of negligence, such as "reckless disregard," which is contained in this state's vehicular negligent homicide statute, *W.Va.Code*, 17C–5–1 [1979]. In *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979), we recognized that that statute requires more than ordinary negligence. *Id.*, syl. pt. 2.

If *W.Va.Code*, 61–8D–4(b) [1988] expressed another specific standard of negligence as its standard of criminal liability, then we would be bound to apply that standard. For example, in a similar context, "[w]here a statute adopts degrees of negligence as a basis for fixing criminal responsibility, the court must give effect to them, even though they are not recognized in civil cases." 22 C.J.S. *Criminal Law* § 38, at 45 (1989).

Our decision is limited to holding that *W.Va. Code*, 61–8D–4(b) [1988] requires neglect, which, as defined in *W.Va.Code*, 61–8D–1(6) [1988], is, fundamentally, of a higher degree than ordinary negligence.

The State maintains that even under a more stringent standard, the defendant's conduct in this case is violative of such a standard. As stated in note 3, *supra*, our decision in this case does not specifically address the defendant's alleged conduct. Rather, we limit ourselves to deciding the constitutionality of *W.Va.Code*, 61–

8D–4(b) [1988] and *W.Va.Code*, 61–8D–1(6) [1988].

**7.** The defendant maintains that the State's reliance upon *Lucero* is misplaced because in that case, the court was faced with a statute in which the legislature had expressly eliminated the intent requirement by including the term "negligently" in the statute. *Lucero* is not dispositive of the case now before us. It is, however, persuasive. As stated previously herein, we believe that *W.Va.Code*, 61–8D–4(b) [1988] does not require intent. The defendant also claims that *Lucero* is distinguishable from this case because in *Lucero*, the court addressed a child *abuse* statute, whereas here, we are reviewing a child *neglect* statute. We believe that this distinction is inapposite for purposes of our decision in this case. While it is true that abuse refers more to the commission of an act and neglect refers to the omission of an act, the terms "child abuse" and "child neglect" are intertwined in several contexts. See, for example, *W.Va.Code*, 49–1–3 [1990], which sets forth definitions relating to child abuse *and* neglect in a civil context. *See also State v. Eagle Hawk*, 411 N.W.2d 120, 123–24 (S.D.1987) (agreeing with State's reasoning that, at some point, parental *neglect* may become *abuse* of child).

S.E.2d 62, 66 (1981). *See* syl. pt. 2, *Less;* syl. pt. 1, *State v. Reed,* 166 W.Va. 558, 276 S.E.2d 313 (1981); *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 638–39, 236 S.E.2d 565, 569 (1977); *State ex rel. Cogar v. Kidd,* 160 W.Va. 371, 376–77, 234 S.E.2d 899, 902 (1977); *Anderson v. George,* 160 W.Va. 76, 84, 233 S.E.2d 407, 411 (1977) (Miller, J., concurring); *State v. Grinstead,* 157 W.Va. 1001, 1009, 206 S.E.2d 912, 918 (1974).

This Court is of the opinion that neither *W.Va.Code,* 61–8D–4(b) [1988], nor *W.Va. Code,* 61–8D–1(6) [1988] are unconstitutionally vague.

In reaching this conclusion, we look to see whether the criminal statute at issue notifies a potential offender that he or she may be in violation thereof. Although

[t]here is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions[,] [t]he basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.

Syl. pt. 1, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970).

■ As pointed out previously herein, the term "unreasonable" means unwise, senseless, or not rational. *Black's Law Dictionary* 1379 (5th ed. 1979). *See also Beerman v. City of Kettering,* 14 Ohio Misc. 149, 154, 237 N.E.2d 644, 648 (1965). The statute's use of this term is clear. Furthermore, the "minimum degree of care" is a term which requires little explanation in ascertaining proscribed conduct under the statute at issue.

The definition of "neglect" is comprised of these terms and set forth in *W.Va.Code,* 61–8D–1(6) [1988]. The term "neglect," in turn, is used in *W.Va.Code,* 61–8D–4(b) [1988], which makes it a crime to neglect a child where such neglect results in a serious injury.

Clearly, the term "neglect," as that term is used in *W.Va.Code,* 61–8D–4(b) [1988], and defined in *W.Va.Code,* 61–8D–1(6) [1988], "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227 (1972). *See* syl. pt. 1, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970).

Consistent with the foregoing, we hold that the term "neglect," as defined by *W.Va.Code,* 61–8D–1(6) [1988], is not unconstitutionally vague in violation of due process principles contained in *U.S. Const.* amend. XIV, § 1, and *W.Va. Const.* art. III, § 10. Therefore, *W.Va.Code,* 61–8D–4(b) [1988] is not unconstitutionally vague in violation of due process principles contained in *U.S. Const.* amend. XIV, § 1, and *W.Va. Const.* art. III, § 10, because such statute's use of the term "neglect" gives a person of ordinary intelligence fair notice that his or her contemplated conduct is prohibited and it also provides adequate standards for adjudication.

Accordingly, the judgment of the Circuit Court of Harrison County is reversed.[8]

Reversed.

---

**8.** Our decision in this case is limited to reversing the judgment of the circuit court only with respect to the issue of the constitutionality of the statutes at issue in this case. Our decision does not address the question of the defendant's guilt or innocence, but merely allows the State to reindict the defendant under the applicable statute. *See supra* note 3.